[Cite as *State v. Jefferson*, 2017-Ohio-7272.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. L-16-1182 |
| Appellee | Trial Court No. CR0201601280 |
| v. | |
| Tanelle M. Jefferson | **DECISION AND JUDGMENT** |
| Appellant | Decided: August 18, 2017 |

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**JENSEN, P.J.**

## I. Introduction

{¶ 1} Appellant, Tanelle Jefferson, appeals the judgment of the Lucas County Court of Common Pleas, sentencing him to 12.5 years in prison following a jury trial in

which he was found guilty of one count of felonious assault with a firearm specification and one count of having weapon while under disability.

## A. Facts and Procedural Background

{¶ 2} On February 12, 2016, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree, and one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree. Based upon the allegation that appellant committed the felonious assault while in possession of a firearm, a firearm specification was attached to the felonious assault under R.C. 2941.145.

{¶ 3} Thereafter, appellant entered pleas of not guilty to the aforementioned charges, and the matter proceeded to discovery. Following pretrial proceedings and motion practice, a two-day jury trial commenced on July 18, 2016.

{¶ 4} At trial, the state first presented the testimony of appellant's wife, Jeanette Ervin. Ervin and appellant were married in December 2015. According to Ervin, the marriage "started out fun," but eventually became abusive. Specifically, Ervin stated: "Well, after being together for a while, I noticed some changes in [appellant]. He would always grab on my clothes, rough me up, and he had that temper about [himself] and I would have to fight him off." Due to the abuse that was existent within their marriage, appellant and Ervin resided separately.

{¶ 5} Three months into the marriage, Ervin decided that it was time to end her relationship with appellant. After Ervin informed appellant of her decision to end the

2.

marriage, appellant asked Ervin to come to his house so that they could talk about possibly staying together. Ervin noticed that appellant was drinking from a bottle of Hennessy brandy when she arrived at his house. During the discussion, Ervin also noticed a handgun sitting on a nearby table.

{¶ 6} When Ervin informed appellant that she was leaving him, he told her that she was not going anywhere. Ervin then attempted to exit appellant's home. At trial, Ervin recounted the ensuing incident as follows:

> And as I'm trying to get out the door, the front door, he's blocking me. So I break and run through the dining room to the kitchen to go down these steps to get away from him. And he put his foot on the back door and said, you're not going anywhere.
>
> All of a sudden he [started] screaming and hollering and I'm just begging him, please. I called him Tee Jay. Tee Jay, let me go. I want to go home, leave me alone. I don't want to be here with you anymore. Let me go.
>
> He kept saying, no, screaming and hollering, still got ahold of my clothes, to my clothes. I go back up the steps to the kitchen and the voice that came out of him was something like I've never heard before, like demons. He was just screaming and hollering at me.
>
> And I knew at that point something bad is getting ready to happen because I already knew he had that gun.

3.

So I tried to keep quiet and not say anything and I'm – he got me backed up there against this thing and I'm like Tee Jay, let me go; I want to go home.

So I managed – he kept telling me I wasn't going to go. I managed to get around him, go through the dining room. He's going to grab me again. Still got my clothes. By that time this weapon, this gun, hits the floor. I say, it's time for me to break and run for my life.

I ran out that door so fast. I was trembling. I was scared to death. I feared for my life.

As I'm running out the door going down the steps I hear a pow. I'm like, oh, my God, he done shot at me, am I shot? I run around to my car. I'm shaking. I'm trembling. I'm falling down to my knees. The [key is] dropping out of my hand. I'm trying to get in my car to get away and I look through my car window to see where he was at after he shot at me. He's standing on this porch like it's nothing. He [turns] around and he walks back in the house.

{¶ 7} Upon further questioning, Ervin acknowledged that she did not actually witness appellant shoot at her because she was running away from him at the time. Nonetheless, appellant was insistent that she heard appellant fire a shot from where he was standing on the front porch of his home. When asked how she could be certain that appellant fired a shot at her, Ervin stated: "Because I heard the pow and I knew he had a gun. And he was angry."

4.

{¶ 8} As its next witness, the state called Brian Heath. Heath and his partner, Scott Bruhn (whom the state called as its third witness), were the first officers to arrive on the scene after Ervin called 911. Initially, Heath set up a perimeter around appellant's house. Meanwhile, Bruhn questioned Ervin, who informed him that appellant had just shot at her and was still inside the home. Eventually, Heath and Bruhn took appellant into custody. Upon further questioning, Ervin explained to Bruhn that appellant had shot at her from the front porch of the home.

{¶ 9} After learning that appellant fired a shot at Ervin from his front porch, Bruhn alerted the detective bureau and began searching the area around the porch for a shell casing. Bruhn was accompanied by another officer, Michael Watson. Ultimately, Watson discovered one Hornady .25 ACP caliber spent shell casing on top of the grass five to six feet from the edge of the front porch. According to Watson, the location of the shell casing was consistent with Ervin's contention that appellant fired at her while standing on the front porch.

{¶ 10} For its fourth witness, the state called Nathaniel Sahdala. Sahdala also responded to the scene after Ervin called 911. After appellant was arrested and taken into custody, Sahdala entered appellant's home. Upon entry, Sahdala entered the dining room, where he observed a portion of carpet that was folded over with the rear half of a handgun visible underneath the carpet. Sahdala then rolled back the rest of the carpet that was folded and discovered two additional firearms, both of which were loaded.

5.

Thereafter, Sahdala retrieved the firearms and unloaded the ammunition. One of the firearms was a .25 caliber handgun, which contained Hornady .25 ACP ammunition matching the shell casing that Watson discovered next to the front porch.

{¶ 11} As its final witness, the state called detective Sherri Wise. Wise arrived at appellant's residence and was involved in the removal of the firearms from the dining room. Wise eventually interviewed appellant at the police station, where appellant admitted to having fired a weapon earlier in the day. Initially, appellant insisted that he shot a possum. However, the type of animal that was allegedly shot changed several times during the course of Wise's interrogation of appellant. Further, appellant claimed that he shot the animal with a Winchester rifle, which was not located at the residence. Ultimately, the three handguns that were removed from the residence were tested and found to be operable. Notably, Wise corroborated the previous testimony that the .25 caliber handgun that was removed contained ammunition matching the spent shell casing found on the lawn adjacent to the front porch.

{¶ 12} At the close of the state's case-in-chief, appellant moved for an acquittal under Crim.R. 29, arguing that the state failed to provide sufficient evidence as to the felonious assault count. After hearing arguments, the court denied appellant's motion. The court then provided instructions to the jury, and deliberations began. Ultimately, the jury found appellant guilty of felonious assault and having weapons while under disability, as well as the attendant firearm specification. The court immediately proceeded to sentencing, ordering appellant to serve 7 years in prison for the felonious

6.

assault count and 30 months in prison for the having weapons while under disability count. The court ordered the sentences to be served consecutive to one another, and consecutive to the mandatory 3-year sentence imposed pursuant to the firearm specification, for a total prison sentence of 12.5 years. Appellant's timely appeal followed.

### B. Assignments of Error

{¶ 13} On appeal, appellant assigns the following errors for our review:

I. The trial court erred to the prejudice of Appellant in denying his Rule 29 motion.

II. The jury's verdict was against the manifest weight of the evidence introduced by the state at trial.

### II. Analysis

{¶ 14} In appellant's first assignment of error, he argues that the trial court erred in denying his Crim.R. 29 motion as to his conviction for felonious assault.

{¶ 15} A motion for acquittal under Crim.R. 29(A) is a challenge to the sufficiency of the evidence. *See State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any

7.

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 16} Initially, the state argues that appellant waived his right to challenge the trial court's denial of the Crim.R. 29 motion by failing to renew his motion at the close of all of the evidence. In *State v. Messer*, 6th Dist. Lucas No. L-16-1109, 2017-Ohio-1223, we held that "a criminal defendant does not waive the right to challenge the sufficiency of the evidence or the denial of a Crim.R. 29(A) motion despite failing to renew the motion following the close of all evidence." *Id.* at ¶ 18. Thus, we reject the state's waiver argument.[1] Next, we consider whether the evidence presented by the state at trial was sufficient to support appellant's conviction for felonious assault.

{¶ 17} Under R.C. 2903.11(A)(2), a defendant may be convicted of felonious assault for causing or attempting to cause physical harm to another by means of a deadly weapon. "Firing a gun in a person's direction is sufficient evidence of felonious assault." *State v. Jordan*, 8th Dist. Cuyahoga No. 73364, 1998 Ohio App. LEXIS 5571, *31 (Nov.

---

[1] Additionally, we note that appellant did not present any evidence of his own in this case. Consequently, renewing his Crim.R. 29 motion would have been futile.

25, 1998). According to appellant, the state failed to introduce sufficient evidence to establish that he fired a shot at Ervin as she was fleeing from the residence.

{¶ 18} In denying appellant's Crim.R. 29 motion, the trial court characterized this case as a "close call." We agree. While the state did not introduce direct evidence as to whether appellant pointed his firearm at Ervin and pulled the trigger, we find that the circumstantial evidence was sufficient to establish that he did so.

{¶ 19} During her testimony at trial, Ervin testified that she clearly heard a gunshot ring out from the area around the front porch as she was running out of the residence. Prior to this point, appellant was enraged at the thought of Ervin terminating the marriage, and had already violently reacted by biting Ervin and attempting to prevent her from leaving the residence. During the incident, Ervin observed a handgun sitting on a nearby table. After arriving at her vehicle following the gunshot, she looked back and saw appellant reentering the residence from the front porch.

{¶ 20} During the ensuing investigation, authorities recovered several firearms inside the residence. One of these firearms contained ammunition that matched a .25 caliber spent shell casing that was discovered lying on top of the grass next to the front porch. Appellant attempted to explain the spent shell casing by admitting to having shot at a possum earlier in the day. However, according to detective Wise, appellant's story changed several times during the interrogation.

{¶ 21} Construing the foregoing evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found, beyond a reasonable

9.

doubt, that appellant attempted to cause Ervin serious physical harm by firing a shot in her direction as she attempted to escape the residence. Thus, the trial court properly denied appellant's Crim.R. 29 motion, and appellant's first assignment of error is not well-taken.

{¶ 22} In his second assignment of error, appellant argues that his conviction for felonious assault was against the manifest weight of the evidence.

{¶ 23} When reviewing a manifest weight of the evidence issue, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

{¶ 24} In advancing his manifest weight argument, appellant notes that police were unable to recover the actual round that he allegedly fired. Appellant also cites to the fact that the state failed to test the .25 caliber handgun to determine how recently it had been fired, and also failed to test him for gunshot residue upon his arrest. Finally, appellant takes issue with the fact that no alcohol bottle was found at the residence to corroborate Ervin's testimony that appellant had been drinking.

10.

{¶ 25} Upon examination of the entire record in this case, we do not find that the issues raised by appellant present the exceptional case in which the evidence weighs heavily against the conviction. The officers who testified at the trial explained that they did not expect to find the round that was fired from the .25 caliber handgun because of its size and the amount of distance it could have traveled. Testing of the firearm to ascertain how recently it was fired was largely unnecessary in light of Ervin's statements that appellant shot at her from the front porch paired with the discovery of the spent .25 caliber shell casing. The same holds true as to the testing of appellant for gunshot residue. Finally, we find that the failure of authorities to locate the bottle of alcohol appellant had allegedly been drinking was unremarkable in light of the focus of their investigation; namely, the discovery of evidence that would support Ervin's claim that appellant shot at her.

{¶ 26} In light of the foregoing, we find that appellant's conviction for felonious assault was not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 27} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                               _____
                                                                JUDGE

Thomas J. Osowik, J.

                                                      _____
James D. Jensen, P.J.                                          JUDGE
CONCUR.

                                                      _____
                                                                JUDGE