[Cite as *State v. Fox*, 2018-Ohio-501.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-295 |
| | | (C.P.C. No. 15CR-5585) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Lewis R. Fox, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 8, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie B. Swanson*, for appellee. **Argued:** *Valerie B. Swanson.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Lewis R. Fox, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of two counts of felonious assault with firearm specifications. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} By indictment filed November 13, 2015, plaintiff-appellee, State of Ohio, charged Fox with two counts of felonious assault in violation of R.C. 2903.11, with three-year firearm specifications. Fox pleaded not guilty and the matter proceeded to a jury trial in January 2017. As pertinent to this appeal, the following evidence was presented at trial.

{¶ 3} Mary Griffin testified as follows. During the evening of October 29, 2015, Mary Griffin and her grandmother, Mary Robinson, drove to Elaine Robinson's residence. When they arrived, Elaine opened the door and they all talked, with Mary Griffin and Mary Robinson standing just outside the front door. At some point, Fox came down from the upstairs of the residence, and "some words were exchanged" between Mary Griffin and Fox. (Tr. Vol. II at 160.) Fox called Mary Griffin and Mary Robinson "bitch[es]," and said if they "didn't move off his porch that he was going to shoot" them. (Tr. Vol. II at 160.) Fox was only a few feet away from Mary Griffin as they verbally confronted each other. Mary Griffin heard two or three gunshots and then realized she had been shot in her upper thigh. Mary Griffin did not see the firearm in Fox's hand prior to hearing the gunshots, but she observed Fox raise his arm when the shots were fired. Fox had pointed the gun at Mary Griffin's leg. Mary Griffin denied lunging at or touching Fox before the shooting. Mary Robinson was standing close behind Mary Griffin at the time of the shooting.

{¶ 4} Mary Robinson testified as follows. On the day of the shooting, she and Mary Griffin intended to pick up Elaine Robinson from her home because she was having problems with her boyfriend, Fox. After they arrived at Elaine's residence, Elaine told them that Fox would not let her go with them. Elaine called for Fox, and when he descended the stairs he was angry and possibly drunk. Fox said, "I'm sick of you bitches." (Tr. Vol. II at 222.) Mary Robinson saw Fox's right "hand coming up," and then she heard one or two gunshots. (Tr. Vol. II at 213.) Fox was pointing the weapon at Mary Griffin. Prior to the weapon being discharged, Mary Robinson did not see Mary Griffin touch Fox in any manner, but they were in close proximity to each other. Mary Robinson was within arm's reach of Mary Griffin when Fox fired the shots. Fox "didn't make any threats * * * He just shot [Mary Griffin]." (Tr. Vol. II at 236.) No bullet struck Mary Robinson.

{¶ 5} Elaine Robinson, who was called as a witness on Fox's behalf, testified as follows. Fox and Elaine were living together on the day of the shooting. On that day, Mary Griffin and Mary Robinson arrived at Elaine and Fox's residence upset because of statements Fox had made regarding Mary Robinson. Elaine called for Fox and told him that "Mary and them are at the door." (Tr. Vol. III at 350.) Fox came down the stairs and to the front door. Elaine did not see Fox carrying a weapon until she heard two gunshots.

Fox did not point the weapon at anyone. When Fox fired the weapon, he was falling backward in response to Mary Griffin moving her hands toward Fox. Elaine characterized the shooting as being an accidental consequence of Fox stumbling backward. Elaine also testified that she told the police after the shooting that Fox shot downward at the porch to scare away Mary Griffin and Mary Robinson.

{¶ 6} Fox testified on his own behalf. At approximately 8:00 p.m. on the day of the shooting, Fox was upstairs at his residence when he heard loud voices downstairs. Fox heard someone screaming in anger and then heard Elaine call for him in a distressed manner. Because he was concerned that there was an intruder in the house, he grabbed a gun from his bedroom closet and brought it with him down the stairs. Holding the gun hidden behind his leg with his finger on the trigger, Fox stood in the doorway to the home and told Mary Griffin and Mary Robinson that they needed to leave. Mary Griffin then "lunged" at him like she was going to grab him. (Tr. Vol. III at 446.) Fox testified that he accidentally shot the firearm twice. Fox "stumbled back * * * and the firearm just discharged." (Tr. Vol. III at 446.) He "even [saw] the fire shoot out twice, shot twice." (Tr. Vol. III at 447.) He did not either raise the gun or shoot at the ground on purpose. After the weapon fired twice, Fox dropped it on a chair inside the house. When asked how the firearm discharged, Fox explained, "I guess I squeezed the trigger or something. You know how you're - - an excited moment. I mean, it surprised me." (Tr. Vol. III at 457.)

{¶ 7} After the shooting, and based on information Fox provided, police recovered a five-shot revolver in the kitchen of Elaine and Fox's residence. Two of the rounds were spent, and the other three were unfired. Columbus Division of Police Detective Steven Miller, who interviewed Fox on the night of the shooting, testified that the gun recovered from the scene of the shooting was a "double-action" firearm. (Tr. Vol. III at 288.) For this type of firearm, the hammer must be pulled back with a squeeze or pull of the trigger in order to fire each bullet. The parties stipulated that Mary Griffin sustained an injury consistent with a single gunshot that entered her right thigh and exited her right buttock at a down to up trajectory.

{¶ 8} At the conclusion of trial, Fox's counsel requested that the trial court instruct the jury on the offense of negligent assault in addition to instructing the jury on the charged offense of felonious assault. The trial court declined to give the requested

negligent assault instruction, and the jury found Fox guilty on both counts of felonious assault with firearm specifications. The trial court sentenced Fox to a total of ten years in prison. Fox timely appeals.

## II. Assignments of Error

{¶ 9} Fox assigns the following errors for our review:

> [1.] The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of felonious assault as those verdicts were not supported by sufficient evidence and was also against the weight of the evidence.
>
> [2.] The trial court abused its discretion by not instructing the jury on the offense of negligent assault as a lesser included offense of felonious assault.

## III. Discussion

### A. First Assignment of Error – Sufficiency and Manifest Weight of the Evidence

{¶ 10} Fox's first assignment of error alleges that both of his felonious assault convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 11} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution

of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 12} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 13} Fox was convicted of violating R.C. 2903.11, which states in pertinent part that "[n]o person shall knowingly do either of the following: (1) Cause serious physical harm to another * * * [or] (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon." In challenging his convictions, Fox asserts that Mary Griffin lunged at him during their confrontation, causing him to fall backward over a piece of furniture and accidentally fire the weapon. He argues that he did not have the mental state required to be convicted of felonious assault.

{¶ 14} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). When determining whether a defendant acted knowingly, his state of mind must be determined from the totality of the circumstances surrounding the alleged crime. *State v. Ingram*, 10th Dist. No. 11AP-1124, 2012-Ohio-4075, ¶ 22. Culpable mental states are frequently demonstrated through circumstantial evidence. *Id.* Evidence that a defendant fired a gun in a person's direction is sufficient

evidence that the defendant acted knowingly for the purpose of a felonious assault conviction. *State v. Jefferson*, 6th Dist. No. L-16-1182, 2017-Ohio-7272, ¶ 17.

{¶ 15} The evidence presented at trial reasonably demonstrated that Fox acted knowingly in causing serious physical harm to Mary Griffin and in attempting to cause physical harm to Mary Robinson by means of a deadly weapon. According to Fox's testimony, the shooting was an accident. However, even if it was not Fox's intent to injure either Mary Griffin or Mary Robinson, he fired the weapon under circumstances where the risk of injury supported the inference that he acted knowingly. Mary Griffin testified that Fox threatened to shoot her and Mary Robinson if they did not move off his porch. Fox admitted at trial that he had his finger on the trigger when he confronted Mary Griffin and Mary Robinson at the door of his residence, demonstrating he was prepared and ready to fire the weapon. Testimony at trial also showed that the trigger of the gun that he fired twice had to be squeezed for each bullet discharge with a force sufficient to pull the hammer back. Further, Fox, Mary Griffin, and Mary Robinson were all in close proximity to each other when Fox fired the shots, and both Mary Griffin and Mary Robinson testified that Fox pointed the weapon in Mary Griffin's direction. One of the bullets struck Mary Griffin in the thigh. Additionally, testimony indicated that Mary Robinson was standing close behind Mary Griffin when Fox fired the two shots, and thus she was also in the line of fire. Considering this evidence, the jury reasonably disbelieved Fox's explanation that the shooting was an accident and convicted Fox of two counts of felonious assault.

{¶ 16} In sum, the evidence was sufficient to convict Fox of committing two counts of felonious assault, and Fox fails to show that the jury clearly lost its way and created a manifest miscarriage of justice. Because Fox's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, we overrule Fox's first assignment of error.

**B. Second Assignment of Error – Jury Instruction on Negligent Assault**

{¶ 17} Fox's second assignment of error alleges the trial court erred in not instructing the jury on the offense of negligent assault in regard to Count 1 of the indictment (Fox's alleged assault of Mary Griffin). This assignment of error lacks merit.

{¶ 18} This court reviews a trial court's refusal to instruct the jury on a lesser-included offense under the abuse of discretion standard. *State v. Coleman-Muse*, 10th Dist. No. 15AP-566, 2016-Ohio-5636, ¶ 8; *State v. Parnell*, 10th Dist. No. 11AP-257, 2011-Ohio-6564, ¶ 21-27. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Clark*, 71 Ohio St.3d 466, 470 (1994).

{¶ 19} R.C. 2903.14(A) states that "[n]o person shall negligently, by means of a deadly weapon * * * cause physical harm to another." This court has held that negligent assault, as defined by R.C. 2903.14, is a lesser-included offense of felonious assault, as defined by R.C. 2903.11(A)(2) (the provision prohibiting anyone from knowingly causing physical harm to another by means of a deadly weapon). *State v. Anderson*, 10th Dist. No. 06AP-174, 2006-Ohio-6152, ¶ 38.

{¶ 20} An instruction on a lesser-included offense is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. *Anderson* at ¶ 39, citing *State v. Carter*, 89 Ohio St.3d 593, 600 (2000); *see State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, ¶ 34 (a trial court "must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense").

{¶ 21} In deciding whether to provide a lesser-included offense instruction, the trial court must consider both the state's evidence and the defense's evidence, and it must view the evidence in the light most favorable to the defendant. *Anderson* at ¶ 39; *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 37. An instruction on a lesser-included offense is not warranted, however, every time "some evidence" is presented to support the lesser offense. *State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397, ¶ 84. The court must find "sufficient evidence" to allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser-included (or inferior degree) offense. *Id.* For example, "a defendant's own testimony that he did not intend to kill his victim does not entitle him to a lesser-included offense instruction 'if the evidence on whole does not reasonably support an acquittal on the murder offense and a conviction on a lesser offense.' " *Id.*, quoting *State v. Willis*, 8th Dist. No. 99735, 2014-Ohio-114, ¶ 51.

{¶ 22} Therefore, the issue presented here is whether the evidence at trial supported both an acquittal as to the charged offense of felonious assault and a conviction for negligent assault. A key distinction between the offenses of felonious assault and negligent assault is that felonious assault requires a knowing mental state, whereas a negligent mental state is sufficient to establish negligent assault. *Anderson* at ¶ 39. While a knowing mental state indicates awareness of the probability that one's conduct will cause a certain result or be of a certain nature, a "person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature." R.C. 2901.22(D).

{¶ 23} According to Fox's testimony, he fired the gun accidentally twice, and he argues on appeal that he lacked due care by bringing the gun with him down the stairs to confront the people at his door. Fox's trial testimony seemed to suggest his view that he lacked any culpable mental state regarding the firing of the weapon. However, having the trial court instruct the jury on the offense of negligent assault, in addition to the charged offense of felonious assault, would be inconsistent with an assertion of lack of any culpability. Rather, an acquittal would have been the appropriate outcome if in fact he lacked any culpable mental state. On appeal, Fox suggests that the discharge of the weapon was an accident caused by his negligence. He argues that his discharge of the weapon was the result of him negligently deciding to bring the weapon with him to confront Mary Griffin and Mary Robinson. Certainly, it is possible that a deviation from due care may cause an "accidental" shooting. *See, e.g., In re I.L.J.F.*, 12th Dist. No. CA2014-12-258, 2015-Ohio-2823. However, Fox's decision to bring the weapon with him to confront Mary Griffin and Mary Robinson at his front door was not the basis of the felonious assault charges and his subsequent conduct demonstrated a more culpable mental state. The assaults occurred when Fox fired the weapon twice when Mary Griffin and Mary Robinson were within a few feet of him. And the undisputed evidence further demonstrated that Fox had to pull the trigger each of the two times he engaged the firing mechanism with enough force to pull the hammer back. On these facts, in view of the undisputed evidence, no reasonable jury could have found that Fox's self-asserted

deviation from due care—i.e., his decision to bring the firearm with him to confront Mary Griffin and Mary Robinson—proximately caused physical harm to Mary Griffin.[1]

{¶ 24} Because the evidence at trial did not reasonably support both an acquittal for felonious assault and a conviction for negligent assault, the trial court did not abuse its discretion in declining to instruct the jury on negligent assault.  Therefore, we overrule Fox's second assignment of error.

## IV.  Disposition

{¶ 25}  Having overruled Fox's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, J., concurs.
HORTON, J., concurs in part and dissents in part.

HORTON, J., concurring in part and dissenting in part.

{¶ 26} While I concur with the majority's decision to overrule the first assignment of error, I respectfully dissent from its conclusion that the second assignment of error is without merit.

{¶ 27} The majority correctly frames the issue as "whether the evidence at trial supported both an acquittal as to the charged offense of felonious assault and a conviction for negligent assault." (Majority Decision at ¶ 22.)  However, the majority seems to suggest that a legal error would always occur if a lesser-included offense of negligent assault were ever given in a felonious assault case due to the "inconsistent" mens rea involved. (Majority Decision at ¶ 23.) I believe this to be an error in reasoning. Additionally, the majority appears to misinterpret Fox's testimony that he accidentally fired the weapon as an "assertion of lack of any culpability." (Majority Decision at ¶ 23.) To the contrary, accidental discharge of a weapon is entirely consistent with the mental state of negligence.  For example, in *In re I.L.J.F.*, 12th Dist. No. CA2014-12-258, 2015-Ohio-2823, an appellate court affirmed the delinquent adjudication of a juvenile for

---

[1] Contrary to the dissent's assertion, we do not suggest that it never would be appropriate to give both a negligent assault charge and a felonious assault charge to a jury.  We find that, under the facts of this case, it was not an abuse of discretion for the trial court not to instruct the jury on the offense of negligent assault.

negligent assault under R.C. 2903.14 who accidentally shot a friend. He had brought the gun into a vehicle full of persons high on marijuana, held it while "dancing" and "shrugging his shoulders," and, when the driver took a turn too fast, the gun went off accidentally and shot his friend in the back. *Id.* at ¶ 33. There is no contradiction or inconsistency in arguing that an accidental act is negligent. If Fox had sought to deny *any* lack of culpability, his testimony would not allow for an accident based on a lack of due care.

{¶ 28} The majority has also too narrowly defined the temporal span when Fox's actions lacked due care, confining it to only the moment he pulled the trigger. *In re I.L.J.F.* also illustrates that a defendant's actions leading up to the discharge of the weapon can be probative of a negligent mental state, as the juvenile in that case should never have brought the gun into the car or held it up during the joyride. Here, Fox brought the weapon downstairs and held it in his non-dominant hand, which he had just had eight weeks of physical therapy on before the shooting due to nerve problems. (Tr. at 455.) This was a substantial lapse in due care from which a reasonable jury could conclude that Fox acted negligently.

{¶ 29} "The persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given." *State v. Wilkins*, 64 Ohio St.2d 382, 388 (1980). Taking a reasonable view of the evidence in this case, it would be possible for a jury to return a verdict finding Fox not guilty of felonious assault, and, instead, guilty of negligent assault. Thus, it was unreasonable for the trial court to refuse to instruct the jury on the lesser-included offense. Because in doing so the trial court abused its discretion, I would sustain the second assignment of error.

—————————————