[Cite as *State v. Waters*, 2019-Ohio-1813.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                         Court of Appeals No. L-17-1241

        Appellee                                    Trial Court No. CR0201701869

v.

Kenneth Burton Waters, Jr.                    **DECISION AND JUDGMENT**

        Appellant                                   Decided:  May 10, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**SINGER, J.**

**{¶ 1}** Appellant, Kenneth Burton Waters, Jr., appeals the September 22, 2017

judgment of the Lucas County Court of Common Pleas, where he was sentenced to a

prison term of 15 years to life for felony murder with a firearm specification.  Finding no

error, we affirm.

## Assignments of Error

{¶ 2} Appellant sets forth the following assignments of error:

1. The trial court erred when it refused to instruct the jury on the lesser-included offenses of involuntary manslaughter and reckless homicide.

2. Appellant's conviction is against the manifest weight of the evidence, and appellant is entitled to a new trial.

## Background

{¶ 3} With a single shot, appellant killed Raishaun Williams ("the victim"), while the two were at a small neighborhood party.

{¶ 4} According to appellant, he did not want to shoot the victim. He claims the gun accidentally fired as he changed the hand in which the gun was held. Appellant admits he was aiming the gun at the victim, but claims he only did it in an effort to scare him.

{¶ 5} Appellant was indicted for murder in violation of R.C. 2903.02(A) and 2903.02, and an alternate charge of felony murder in violation of R.C. 2903.02(B) and 2903.02, both being unspecified felonies. Each carried a firearm specification under R.C. 2941.145.

{¶ 6} Appellee offered appellant a plea deal, but it was rejected and appellant proceeded to a jury trial.

2.

**{¶ 7}** At trial several individuals testified, including eyewitnesses to the shooting and aftermath, responding and investigating officers, crime-scene and laboratory analysts, a deputy coroner, and appellant.

**{¶ 8}** On September 14, 2017, the jury found appellant guilty of the felony murder. The court accepted the verdict and sentenced appellant to a mandatory term of 15 years to life, and to another mandatory term of three years for the gun specification. These sentences were set to run consecutively.

**{¶ 9}** The judgment entry was e-journalized on September 22, 2017, and appellant timely appeals.

### First Assignment of Error

**{¶ 10}** In the first assigned error, appellant argues the trial court erred in refusing to instruct the jury on involuntary manslaughter and reckless homicide. Appellee contends appellant was not entitled to jury instructions on these lesser-included offenses.

**{¶ 11}** "The offense of involuntary manslaughter proscribes that '[n]o person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.'" *See, e.g., State v. Rickard*, 6th Dist. Wood Nos. WD-17-011, WD-17-012, 2019-Ohio-298, ¶ 47, quoting R.C. 2903.04(A). "Likewise, the offense of reckless homicide proscribes that '[n]o person shall recklessly cause the death of another or the unlawful termination of another's pregnancy.'" *Id.*, quoting R.C. 2903.041(A).

3.

**{¶ 12}** "Both involuntary manslaughter and reckless homicide are lesser included offenses of felony murder." *Id*., citing *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 190. "Felony murder is defined as '[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.'" *Id*., quoting R.C. 2903.02(B).

**{¶ 13}** Here, we find appellant has not demonstrated that he was entitled to instructions on involuntary manslaughter or reckless homicide.

**{¶ 14}** "Even though an offense may be a lesser included offense, a charge on the lesser offense is required 'only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense.'" *Id*. at ¶ 48, quoting *Trimble* at ¶ 192; *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus. "To be acquitted of felony murder, but still found guilty of involuntary manslaughter or reckless homicide, the evidence must reasonably support that appellant did not act knowingly." *Id*.

**{¶ 15}** Here, however, the evidence presented establishes appellant acted knowingly. At trial, he admitted to raising the gun and pointing it toward the victim. Specifically, he testified that he followed a friend into a house where the neighborhood party was, and that his friend was arguing with the victim inside. Appellant described the subsequent events leading to the shooting, as follows:

4.

[Appellant]: I walked in and then I went ahead and I went in and reached for a minute (demonstrating) and then I just—they wasn't paying attention to me. So I was looking at them for a minute and looking at them arguing for like five to ten seconds, and then I went ahead and reached for my weapon towards him and then as I was grabbing my left to my right, I put my finger on the trigger and then boom it went off like it was—it was a accidental fire. Like I—can't explain how, it just went off.

I just, soon as I was—I didn't even get to reach my left hand on my right hand and then it just boom, went off. I was just trying to get him to, to give up the money and her—and the blunt to her. That's all I was tending to do. That was my intentions. And then he fell, he was—he fell face down.

{¶ 16} As recognized by the Supreme Court of Ohio, "where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill." (Citation omitted). *See State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 137 (inherently dangerous instrumentality presumption factor led the court to determine instruction on involuntary manslaughter was not required). Pointing and firing a gun in a person's direction is felonious assault. *See State v. Jefferson*, 6th Dist. Lucas No.

5.

L-16-1182, 2017-Ohio-7272, ¶ 17, citing *State v. Jordan*, 8th Dist. Cuyahoga No. 73364, 1998 Ohio App. LEXIS 5571, *31 (Nov. 25, 1998).

{¶ 17} Here, we find the record does not support an acquittal of felony murder because there is sufficient evidence to conclude that appellant committed or attempted to commit a felonious assault when he fired the gun that killed the victim. Appellant, thus, was not entitled to jury instructions on involuntary manslaughter or reckless homicide, and his first assigned error is overruled and not well-taken.

**Second Assignment of Error**

{¶ 18} In the second assigned error, appellant challenges the weight and credibility of the evidence. Appellee contends competent and credible evidence supports the verdict and conviction.

{¶ 19} In a manifest weight challenge, we must determine whether the greater amount of credible evidence supports the conviction. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. This court sits as if the "thirteenth juror" and must review the record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier-of-fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *See State v. Leech*, 6th Dist. Lucas No. L-13-1156, 2015-Ohio-76, ¶ 32, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

6.

**{¶ 20}** Here, we have reviewed the evidence in the record and found that this is not the exceptional case in which it weighs heavily against the conviction.

**{¶ 21}** Even accepting certain facts as presented by appellant's own testimony, we find that the fatality that occurred was obviously within the scope of the risk presented by appellant's deliberate act of pointing and firing a loaded gun at the victim, considering the investigating authorities concluded and testified that the gun appellant admitted to pointing at the victim required typical pressure and force to fire it. There is competent and credible evidence from which it is reasonable to conclude appellant pulled the trigger. We, therefore, hold that the jury did not commit a manifest miscarriage of justice when it found appellant acted knowingly, and his second assignment of error is overruled.

### Conclusion

**{¶ 22}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.
CONCURS AND WRITES
SEPARATELY.

_____
JUDGE

Christine E. Mayle, P.J.,
DISSENTS AND WRITES
SEPARATELY.

**OSOWIK, J.**

{¶ 23} I agree with the majority opinion but I write this concurrence to emphasize our standard of review. The decision to instruct the jury on a lesser charge "lies within the discretion of the trial court." *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 1. When applying the abuse-of-discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable,

8.

arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). This term has been defined as "a view or action 'that no conscientious judge, acting intelligently, could honestly have taken.'" *Steiner v. Custer*, 137 Ohio St. 448, 451, 31 N.E.2d 855 (1940), quoting *Long* v. *George*, 7 N.E.2d. 149, 151 (Mass.1937).

{¶ 24} Therefore, even if we find that the trial court made an error of law, we must further find that the trial court possessed an unconscionable attitude and failed to act in an honest, intelligent and conscientious manner when it denied the appellant's motion for the lesser-included jury instruction of reckless homicide. Under the facts presented to us in this particular case, I am unable to conclude that the trial court exhibited such an attitude.

{¶ 25} According to the testimony in this case, appellant and his former girlfriend, T.E., spent the day together, along with some other female companions, partying and driving around town in appellant's car. They were anticipating a barbeque later that evening at a friend's house.

{¶ 26} Upon arrival at the barbeque, the victim began "flirting" with T.E. Ultimately, T.E. offered to sell the victim some marijuana. In response, the victim offered to sell T.E. some of his marijuana which he claimed to be of superior quality. In the course of sampling the victim's product, T.E. believed that she had paid him for some cigarettes that she had never received. By that time, the victim had returned to the house. However, T.E. decided to confront the victim. She was accompanied by another female.

9.

Appellant, armed with a loaded handgun, followed to "aid" T.E. in getting either her money back from the victim or an appropriate cigarette.

{¶ 27} Inside the house, while T.E. argued, appellant then reached for his weapon. However, this gesture alone was not garnering any reaction from the victim or anyone else. According to appellant's own testimony, "they wasn't paying attention to me." A more demonstrative action was needed. Appellant "went ahead reached for my weapon towards him and then as I was grabbing my left to my right, I put my finger on the trigger and then boom it went off like it was – it was a accidental misfire. Like – can't explain how, it just went off." T. E. testified that appellant had the gun in his right hand.

{¶ 28} The coroner testified that the victim was killed by a gunshot through the neck. Thus, appellant withdrew the gun from his pocket, put his finger on the trigger and then raised it up. Finally, he pointed it at the victim. With his finger on the trigger, the gun discharged its bullet and killed the victim.

{¶ 29} There was testimony from the firearms expert from the Laboratory Director of the Toledo Police Crime Lab. When he tested the weapon, he found that the gun did not misfire or "accidentally go off" and that the trigger needed the same forceful action whether the gun was loaded or not.

{¶ 30} The only time appellant stated that he accidentally shot the victim was when he testified.

{¶ 31} In the minutes following the killing, appellant and his former girlfriend fled the area in a car, with him in the passenger seat. He told her to dispose of the gun and the two split up.

**{¶ 32}** There was no independent testimony or physical evidence to corroborate the appellant's self-serving statement that he accidentally shot the victim.

**{¶ 33}** A defendant's own testimony that he did not intend to kill his victim does not entitle him to a lesser-included offense instruction." *State v. Grube*, 2013-Ohio-692, 987 N.E.2d 287, ¶ 38 (4th Dist.), citing *State v. Wright*, 4th Dist. No. 01CA2781, 2002 Ohio 1462. Even though the defendant's own testimony may constitute some evidence supporting a lesser offense, if the evidence on whole does not reasonably support an acquittal on the murder offense and a conviction on a lesser offense, the court should not instruct on the lesser offense. *Id.*, citing *Campbell*, 69 Ohio St.3d 38, 47, 630 N.E.2d 339 (1994); *State v. Shane*, 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272 (1992).

**{¶ 34}** To require an instruction to be given to the jury every time "some evidence," however minute, is presented going to a lesser-included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser-included (or inferior-degree) offense. Trial judges are frequently required to decide what lesser-included (or inferior-degree) offenses must go to the jury and which must not. The jury would be unduly confused if it had to consider the option of guilty on a lesser-included (or inferior-degree) offense when it could not reasonably return such a verdict. *Shane* at 633.

**{¶ 35}** Appellant's claim that his conduct was merely reckless is not supported by the record. He went into the party with a loaded gun intending to help his former girlfriend confront the victim. He pulled the gun out and, with his hand on the trigger, raised it toward the victim who was then shot in the neck. The bullet did not end up in a

11.

floorboard or wall or in some bystander at the barbeque. It went through the intended victim's neck and killed him.

{¶ 36} A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. "'It is not necessary that the accused be in a position to foresee the precise consequences of his conduct; only that the consequences be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct.'" *State v. Rickard*, 6th Dist. Wood Nos. WD-14-016, WD-14-017, 2015-Ohio-3298, ¶ 67, quoting *State v. Losey*, 23 Ohio App.3d 93, 96, 491 N.E.2d 379 (10th Dist.1985).

{¶ 37} On the evidence presented, no reasonable jury could have found that defendant acted less than knowingly in shooting the victim.

{¶ 38} For these reasons, I find no abuse of discretion by the trial court.

**MAYLE, P.J.**

{¶ 39} Respectfully, I dissent. I believe that appellant was entitled to an instruction on the lesser-included offense of reckless homicide.[1] Thus, I would find the appellant's first assignment of error well-taken, and reverse the trial court judgment.

---

[1] Although the appellant also argues that the trial court erred in failing to instruct on involuntary manslaughter, R.C. 2903.04, as a lesser-included offense of purposeful murder under R.C. 2903.02(A) (of which he was acquitted), the appellant did not submit a written request for an involuntary-manslaughter instruction as required by Crim.R. 30(A). For that reason, I would have found that the trial court did not err by failing to

12.

{¶ 40} Although the majority cites the correct standard for evaluating whether a lesser-included offense is required—i.e., a lesser included offense is required "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense" *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus—I do not believe that it correctly applied the standard in this case.

{¶ 41} That is because the majority ultimately concludes that a lesser-included offense instruction was not warranted because there was sufficient evidence to support the appellant's conviction for felony murder with the predicate offense of felonious assault. While I agree that there was sufficient evidence to support the appellant's conviction for felonious assault (and, therefore, felony murder), I do not believe that is the relevant issue. In my view, the court should have considered whether there was sufficient evidence that would have allowed the jury to *reasonably reject* felonious assault, yet convict on the lesser-included offense of reckless homicide. *See State v. Hubbard,* 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 37, quoting *State v. Shane*, 63 Ohio St.3d 630, 632-33, 590 N.E.2d 272 (1992) (stating a lesser-included offense is required when "sufficient evidence is presented which would allow a jury to

---

instruct the jury on involuntary manslaughter. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982), paragraph two of the syllabus.

13.

*reasonably* reject the greater offense and find the defendant guilty on a lesser included * * * offense.") (Emphasis sic.)[2]

{¶ 42} This distinction is important because "[i]n deciding whether to provide a lesser-included offense instruction, the trial court must consider both the state's evidence and the defense's evidence, and it must view the evidence in the light most favorable to the defendant." *See State v. Fox*, 2018-Ohio-501, 106 N.E.3d 224, ¶ 21 (10th Dist.). In other words, depending on the facts of the case, while there may be sufficient evidence to support a conviction of a greater offense, the evidence may also be such that after weighing both the state's evidence and the defense's evidence in the defendant's favor, a jury could reasonably reject the greater offense in favor of the lesser offense. In *State v. Turner*, 2d Dist. Clark No. 2017-CA-78, 2019-Ohio-144, ¶ 38, for instance, the appellate court concluded that the evidence was sufficient to support the appellant's purposeful murder conviction, but it found that a reasonable jury could also have concluded that appellant acted recklessly rather than purposely. The court, therefore, held that the trial court erred by failing to instruct the jury on the lesser-included offense of reckless homicide.

---

[2] The concurring opinion emphasizes that the "decision to instruct the jury on a lesser charge 'lies within the discretion of the trial court.'" I agree with this point, but it must be reconciled with the principle that "[t]he trial court *must* give an instruction on a lesser included offense if under *any reasonable view* of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." (Emphasis added.) *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 34.

14.

**{¶ 43}** Similarly here, I would find that the record contains evidence that—when viewed in a light most favorable to the defense—was sufficient to have allowed a reasonable juror to conclude that the appellant acted "recklessly" (which is required for reckless homicide) instead of "knowingly" (which is required for felony murder with a predicate offense of felonious assault). In my view, the jury should have been allowed to make that determination because it depended upon a credibility assessment of two witnesses: the appellant and the appellant's ex-girlfriend T.E. The appellant and T.E. were the only witnesses who testified regarding the actual shooting, and they presented the jury with two different accounts of the incident.

**{¶ 44}** T.E. testified that she and the appellant used to date, but she broke off the relationship because he was "controlling." On the night of the incident, she drove with the appellant and two female friends to a barbeque party. They parked in an alley next to the backyard, where they were "smoking and drinking." The victim walked up to the car and started flirting with her. After a while, he invited her into the house, and she went with him. T.E. testified that she and the victim were just "standing and talking" in the kitchen when the appellant walked in the back door and, without saying a word, "reached his hand up and shot him." She said that the appellant fired the gun with his left hand.

**{¶ 45}** On cross-examination, T.E. admitted that the first two times that she met with detectives, she did not tell the truth about the incident: she omitted the fact that she had arrived at and left the barbeque with appellant, she said that the shooter "came out of nowhere *in* the house," and she claimed that after the incident, appellant shot at her car, which she acknowledged at trial was untrue. T.E. also neglected to tell detectives that on

15.

the day of the incident, she had been smoking marijuana since morning and had been drinking vodka since 4:00 that afternoon.

{¶ 46} The appellant testified that he and T.E. drove to the party with two other people, and parked in the alley next to the house. He said they stayed in the parked car for a while, and various people came up to talk and drink with them, including the victim and the victim's father, H.W. Appellant knew H.W. because H.W. and appellant's father had been friends for many years.[3]

{¶ 47} The victim began flirting with T.E., and T.E. offered to sell the victim some marijuana. The victim told T.E. that "he had large amounts and he could sell to her for her to sell." He went inside the house, and came back out with his marijuana. He and T.E. compared their marijuana because T.E. claimed that hers was better quality. After examining it, the victim asked if he could smoke some of hers. He went back inside, perhaps to put away his drugs. When he returned, he, T.E., and one of the two female passengers in T.E.'s car ("C")[4] shared a "blunt"—a cigar casing with marijuana in it.

{¶ 48} At some point, T.E. started yelling at the victim, claiming that she had given him money for "single cigarettes," but he never gave them to her. The appellant said that while he never saw T.E. give the victim any money for cigarettes, he assumed that T.E. had done so when the appellant had briefly walked away to pee. T.E. and the

---

[3] H.W. testified that he had known appellant's father since 1973, and they were "very good friends."

[4] C's last name was never referenced.

victim continued to argue, and the appellant heard T.E. tell the victim, "give me my weed." The victim then went inside the house, holding the blunt they had been smoking. T.E. followed him into the house, and C followed T.E., saying she was going to help her. The appellant contemplated leaving and going home, but decided to go inside to "aid" T.E.

{¶ 49} The appellant testified that he walked into the kitchen to find T.E. and the victim still arguing[5]; C was standing to the right. The appellant pulled out his gun because he "was just trying to get [the victim] to, to give up the money and her – and the blunt to [T.E.]." He said that "as I was grabbing my left [hand] to my right [hand], I put my finger on the trigger then boom it went off like it was – it was a accidental fire. Like I – I can't explain how, it just went off." The appellant said that after the shooting, H.W. came in to see if everybody was all right, and he could not look at H.W.—his father's longtime friend— "because I know that's his son." The appellant told T.E., "come on, let's go."

{¶ 50} The appellant and T.E. drove away, and another party-goer started shooting at the vehicle. T.E. parked the car along the side of the road and handed the appellant a bag of money and weed. They exited the vehicle and started running. Eventually, the appellant gave the gun to T.E. and told her to dispose of it for him, and the two split up.

---

[5] Detective William Goodlet acknowledged on cross-examination that a witness who was interviewed after the shooting indicated that the victim had been arguing in the alley, he was heard arguing in the kitchen, and a female said to the victim at some point, "Give me some weed." This would tend to corroborate certain features of the appellant's version of events.

17.

{¶ 51} The appellant testified that he had shot other firearms before, but he had never fired that particular gun before that night. Also, contrary to T.E.'s assertion, appellant said that he was holding the gun in his right hand and the gun fired before he was able to raise his left hand to his right hand.

{¶ 52} In rebuttal, the state called David Cogan, Laboratory Director of the Toledo Police Crime Lab, who had been designated an expert witness on firearms. He testified that he had inspected and tested the appellant's firearm, and he did not discover any defects with the trigger mechanism. Cogan shot the gun twice while loaded. He said that the gun did not malfunction, misfire, or "accidentally go off" either time. Cogan testified that the force necessary to pull the trigger was the same whether the gun was loaded or unloaded. The court then allowed the unloaded gun to be passed to the jurors so that they could each pull the trigger to determine "the amount of tension or pressure" that was needed to fire the gun.

{¶ 53} All of this evidence relates to a significant factual question for the jury to answer: did the appellant intentionally pull the trigger? Given that only two eyewitnesses to the actual shooting testified—the appellant and T.E.— a reasonable juror, construing all of the evidence in the appellant's favor, could have believed the appellant instead of T.E. The jury could have concluded that T.E. either misremembered events because she had been smoking marijuana and drinking vodka for many hours before the events unfolded, or that she was intentionally lying on the stand—as she had lied during her first two police interviews—because she did not want to implicate herself in any crimes.

18.

{¶ 54} Moreover, although the jurors had the opportunity to inspect the gun so that they could each determine "the amount of tension or pressure" that was needed to fire it, we do not know any specifics regarding those individual examinations. Thus, I do not believe that we can say, one way or the other, what inferences would have been "reasonable" for each juror to draw under the circumstances. Finally, construing Cogan's testimony in a light most favorable to the defense, the fact that the loaded gun did not malfunction or misfire during either of the two times that he pulled the trigger does not necessarily mean that the appellant did not somehow unintentionally fire the gun, in the heat of the moment, "while [he] was grabbing [his] left [hand] to [his] right [hand]" as he testified.

{¶ 55} The concurring opinion cites several cases that hold that a defendant's own testimony that he did not intend to kill his victim does not entitle him to a lesser-included offense instruction. While I acknowledge that other courts have reached this conclusion, I strongly disagree with it. Although it is certainly possible that a defendant's own testimony—just like any other piece of evidence—*could* be insufficient to warrant a lesser-included instruction under the facts of the case, I cannot agree that trial testimony should be ignored simply because it came from the mouth of the defendant instead of another witness. "[I]t is not and should never be the function of this court to weigh the credibility of a defendant's story or alibi in this context," as it places this court in the position of a trier of fact. *State v. Thomas*, 40 Ohio St.3d 213, 221, 533 N.E.2d 286 (1988) (Sweeney, J. dissenting). Where a defendant chooses to waive his constitutional right against self-incrimination and testify in his own defense, his testimony should not

19.

be categorically discounted as "minute." This is especially true in a situation like this one, where the appellant's intent was directly at issue and where the jury was presented with the testimony of only two witnesses with information pertinent to his intent: that of the appellant himself, and that of a witness who was admittedly impaired at the time of the event and repeatedly lied to investigators. "While [we] personally may have serious reservations or doubts concerning the defendant's version of the circumstances surrounding the shooting, it is not * * * this court's province to cure the failure of the trial court to give a lesser included offense instruction by holding, *sua sponte,* that the defendant's version was unreasonable." *Id.*

{¶ 56} Accordingly, based on this record, it is my opinion that a reasonable juror, viewing the evidence in the appellant's favor, could have found that the appellant killed the victim *recklessly* under R.C. 2901.22(C) ("A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature") rather than *knowingly* under R.C. 2901.22(B) ("A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."). While the distinction between "recklessly" and "knowingly" in this particular case was a slight one, I believe that it should have been up to the jury to make that tough call based on its own assessment of the appellant's credibility. "[A] jury should not be denied its right to pass upon the credibility and weight of the evidence by failing to charge a lesser included offense where there is evidence tending to support a charge of a lesser included offense."

20.

*State v. Peace*, 6th Dist. No. L-86-361, 1983 Ohio App. LEXIS 14862, *5 (June 3, 1983), quoting *State v. Loudermill*, 2 Ohio St.2d 79, 206 N.E.2d 198 (1965). Even though there were inferences that could have been drawn *against* the appellant from the evidence, I believe that it was ultimately up to the jury to decide who to believe and what inferences to draw, and the court's failure to instruct the jury on reckless homicide usurped the role of the jury in that regard.

{¶ 57} I would hold, therefore, that appellant's request for a reckless-homicide instruction should have been granted, and that the trial court's error was not harmless beyond a reasonable doubt. For that reason, I must dissent.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.