[Cite as *State v. DeGenero*, 2017-Ohio-624.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** | |
| Plaintiff-Appellee, | : | | |
| | | **CASE NO. 2016-P-0014** | |
| - vs - | : | | |
| DEVON DEGENERO, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2014 CR 00774.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Sean C. Buchanan*, Slater & Zurz LLP, One Cascade Plaza, Suite 2210, Akron, OH 44308 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Devon DeGenero, appeals his conviction in the Portage County Court of Common Pleas on one count of identity theft and three counts of forgery. As to all four counts, he asserts the state's evidence was insufficient to establish all elements of the offenses. For the following reasons, we affirm his conviction.

{¶2} Appellant's grandmother, Lucy Helen Aliff, died on March 1, 2013. Three days later, a credit card application in her name was submitted over the internet with the

GE Capital Retail Bank. The application contained Lucy's correct full name and social security number. The bank immediately approved the application and an account was opened in Lucy's name.

{¶3} On the same day the application was submitted, appellant was designated as an authorized user of the credit card. At some point, a credit card was issued to him. However, he did not try to use the card during the remainder of 2013. In May 2014, the bank was again contacted over the internet, and appellant's girlfriend, Trista McQuerry, was designated as an authorized user of Lucy's card.

{¶4} On June 6, 2014, appellant entered a Dollar General store in Windham, Portage County, Ohio, and attempted to use the credit card to purchase $500 of credit on a separate prepaid credit card. Since Dollar General had a policy forbidding this type of purchase, the cashier and the store manager refused to go forward with the transaction. Moreover, since the store manager had prior dealings with appellant and McQuerry, she instructed the cashier to enter the numbers on appellant's card into the store's verification system. In response, the system indicated that the credit card was in Lucy's name. As a result, the manager asked appellant for identification, but he stated that he did not have one at that time.

{¶5} The store manager left the "check-out" area of the building and went into her private office, where she telephoned the Windham police. While the manager was gone, appellant decided to purchase a prepaid phone instead of the prepaid credit card. Since the cost of the prepaid phone was less than $10, the cashier allowed appellant to charge the item on Lucy's credit card. As he was leaving the store, appellant threw the receipt and the packaging for the prepaid phone into a garbage can, which enabled the

store manager to retrieve them.

{¶6} A detective from the Windham police department arrived at the store a few minutes after appellant and McQuerry had departed. After hearing the store manager's statement of the facts and obtaining the receipt and packaging from her, the detective drove around the general vicinity and quickly found him walking with McQuerry near an abandoned drive-through. Upon stopping appellant, the detective asked him about his use of the credit card. Appellant replied that the card was in his grandmother's name and that he was an authorized user. He also gave the detective an alleged phone number for his grandmother, encouraging the detective to call her to verify his authority to use the card. In light of appellant's assertions, the detective allowed him to leave.

{¶7} As part of her ensuing investigation, the detective telephoned the number provided by appellant and left a message on an answering machine. When she did not receive a call back, the detective did research on the internet and found the obituary for appellant's grandmother. As a result, the detective contacted the bank that had issued the card, informing an employee of the bank's fraud unit of the situation. Upon conducting its own investigation, the bank concluded that Lucy Aliff was deceased when the credit card was approved; accordingly, the card was canceled on June 13, 2014.

{¶8} During the period between the Dollar General incident and the subsequent date the bank was told of the potential fraud, appellant made a series of purchases on the credit card at a convenient food store in Windham. In each instance, he executed or approved a credit slip documenting the transaction.

{¶9} In October 2014, appellant was indicted on one count of identity theft and three counts of forgery. The "identity" count was predicated upon the use of Lucy Aliff's

3

name and social security number to procure the credit card after her death. The forgery counts were based upon appellant's use of the credit card to make purchases at Dollar General and the convenience store on June 6 & 7, 2014.

{¶10} Due to the pendency of other criminal charges against appellant, his trial on the credit card charges was delayed until January 2016, when a one-day bench trial was held. In addition to presenting the testimony of the Dollar General store manager, the police detective, and the bank's fraud investigator, the state also introduced tapes of surveillance cameras which recorded appellant's action in the Dollar General store and the convenience store. The purpose of the surveillance tapes was to establish his use of the credit to make the purchases. Appellant did not present any witnesses in defense.

{¶11} At the close of the evidence, the trial court found appellant guilty of all four charges. After holding a separate sentencing hearing, the court ordered him to serve a one-year prison term on each charge. The trial court further ordered that the four terms were to run concurrently, but would not begin to run until appellant finished the prison term imposed in the other criminal action against him.

{¶12} In appealing his conviction, appellant asserts one assignment of error for our review:

{¶13} "The evidence was insufficient to sustain convictions in this case."

{¶14} In regard to the "identity theft" charge, appellant argues that the trial court erred in finding him guilty because the state did not introduce any evidence establishing that he was the person who submitted the application for the credit card. Specifically, he notes that the state failed to present any evidence as to the location of the computer

4

from which the application was submitted.  Concerning the forgery charges, appellant contends that his mere use of the credit card was not legally sufficient because he was an authorized user of the card and the state did not prove that he was actually aware of his grandmother's death when he made purchases with the card.

{¶15} "Raising the question of whether the evidence is legally sufficient to support the * * * verdict as a matter of law invokes a due process concern.  *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541.  In reviewing such a challenge, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'  *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560."  *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶113.

{¶16} The crime of identity fraud is defined in R.C. 2913.49(B), which forbids a person from using, obtaining, or possessing another individual's personal identifying information with the intent to "[h]old the person out to be the other person."  A person's "personal identifying information" includes her social security number.  R.C. 2913.49(A).

{¶17} Appellant claims that there was no direct evidence proving that he was the person who employed his deceased grandmother's social security number to obtain the credit card in her name.  While his assertion as to the lack of direct evidence is correct, the record shows that there is sufficient circumstantial evidence from which a rational trier of fact could infer it was him who submitted the credit card application.

{¶18} "'Circumstantial evidence * * * is proof of facts or circumstances by direct

5

evidence from which (the fact finder) may reasonably infer other related facts which naturally and logically follow according to the common experience of mankind.' *State v. Blankenship* (Sept. 21, 1994), 9th Dist. No. 2815, 1994 Ohio App. LEXIS 4230. It is true that circumstantial evidence has the same probative value as direct evidence and the state need not disprove reasonable theories of innocence. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. Nonetheless, the state can establish facts through circumstantial evidence only insofar as reasonable inferences can be drawn from that evidence. Inferences to be drawn from circumstantial evidence are unreasonable or speculative if they are not supported by the surrounding facts in evidence. *State v. Thomas*, 1st Dist. No. C-010724, at ¶17, 2002-Ohio-7333.

{¶19} "'The sufficiency of circumstantial evidence to prove a fact or to prove guilt depends, among other things, on whether reason and common sense lead us from the facts proved by real or direct evidence to the fact sought to be proved. * * * [W]hen the connection is so weak or attenuated that no reasonable mind could find proof beyond a reasonable doubt, * * * the proof is insufficient as a matter of law to overcome the presumption of innocence.' *State v. Bentz* (1981), 2 Ohio App.3d 352, 355, fn.6, 2 Ohio B. 408, 442 N.E.2d 90; see also, *State v. Griffin* (1979), 13 Ohio App.3d 376, 377-378, 13 Ohio B. 458, 469 N.E.2d 1329." *State v. Rohr-George*, 9th Dist. Summit No. 23019, 2007-Ohio-1264, ¶21-22.

{¶20} In reliance upon circumstantial evidence, Ohio courts have concluded an accused's unexplained possession of recently stolen property allows for a permissive inference that he is guilty of either theft or burglary. *See, e.g., State v. Brown*, 10th Dist.

6

Franklin No. 05AP-601, 2006-Ohio-2307, ¶11. The circumstantial evidence in this case supports a similar inference. That is, given the circumstances in which the application for the credit card was submitted, appellant's subsequent possession of the card allows for the logical inference that he used his grandmother's social security number to obtain the card.

{¶21} First, the application for the card was made within three days of her death. Second, appellant was designated as an authorized user of this card on the same day the application was submitted. Third, he had maintained possession of the card for over a year before he tried to use it. Fourth, when the police detective asked appellant about his use of the card, he specifically responded that his use was permissible because he was an authorized user.

{¶22} Under appellant's theory of the case, if he did not submit the application in question, this must mean that another person was responsible for its submission. But, given that Lucy Aliff was already deceased and appellant was the sole person named as an authorized user when the account was created, this would mean that the second person engaged in identify fraud solely for appellant's benefit. This theory or possible inference does not comport with common sense. Instead, the only logical inference is that appellant himself was responsible for the application's submission.

{¶23} Appellant argues that, since McQuerry was also named as an authorized user of the card, there is a 50/50 chance that she submitted the application. This point might be persuasive if she was given that designation at the same time appellant was. Yet, there is no dispute that she did not become an authorized user until one year after the creation of the account. Thus, when the credit card was first issued, appellant was

7

the sole person to benefit.

{¶24} Notwithstanding the lack of direct evidence regarding the location of the computer used to submit the application, the circumstantial evidence supports the finding of guilt for identity theft.

{¶25} In relation to the three forgery counts, appellant was convicted of R.C. 2913.31(A)(3), which provides: "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." The term "utter" means "to issue, publish, transfer, use, put or send into circulation, deliver, or display." R.C. 2913.01(H).

{¶26} Appellant asserts that, since he was an authorized user of the credit card, no rational trier of fact could find that he had purpose to defraud the bank by making the charges at Dollar General and the convenience store. But this assertion is dependent upon his status as a legitimate authorized user. Given the fair conclusion that appellant engaged in identity theft to obtain the credit card and named himself an authorized user, his status was not legitimate. Thus, purpose to defraud was proven.

{¶27} Appellant has failed to demonstrate error. Accordingly, his sole assignment of error lacks merit, and the judgment of the Portage County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, P.J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only.

8