[Cite as *State v. Howard*, 2022-Ohio-1609.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-33 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-333 |
| | : | |
| DANIEL HOWARD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of May, 2022.

. . . . . . . . . . .

MEGAN A. HAMMOND, Atty. Reg. No. 0097714, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

MICHAEL R. PENTECOST, Atty. Reg. No. 0036803, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Daniel Howard was convicted after a jury trial in the Greene County Court of Common Pleas of aggravated trafficking in drugs in an amount equal to or exceeding 100 times the bulk amount, a felony of the first degree. The trial court imposed a sentence of a minimum of 11 years to a maximum of 16½ years in prison and ordered him to pay court costs. Howard appeals, claiming that his conviction was against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} According to the State's evidence at trial, on October 9, 2019, Postal Inspector Brad Dorman noticed a suspicious Overnight Express package sent from Phoenix, Arizona to "Dave Howard" at Howard's apartment on Old Yellow Springs Road in Fairborn. After a canine alerted to the package, Dorman obtained a federal search warrant to open it. Inside he found a book with pages cut to create a cavity. The contents inside the cavity tested positive for methamphetamine, a Schedule II controlled substance, and weighed approximately 228 grams. (The bulk amount of methamphetamine is 3 grams.) The package was not delivered and, instead, was seized and placed in an evidence locker.

{¶ 3} Howard moved from the Old Yellow Springs Road apartment, and no further Overnight Express packages were sent to that address in 2019. However, beginning on October 24, 2019, Overnight Express packages were sent multiple times per week from Phoenix, Arizona to Howard's new address on South Linda Drive in Bellbrook. Inspector Dorman was not aware of them, and the packages were delivered.

{¶ 4} In January 2020, Inspector Dorman was alerted by the post office that a package had been delivered to an address where someone sitting in a car was waiting for it, picked it up, and then got back in the car and drove away. When another package to that address came through, Dorman intercepted and investigated it. This package also was an Express Overnight package from Phoenix, Arizona, and it was addressed to "Dan Harvard" at the South Linda Drive residence. Dorman had a canine sniff conducted and, after the dog alerted, obtained a search warrant for the package. Upon opening it, the package contained a Hello Kitty lunchbox that was taped up with clear tape. The lunchbox held what appeared to be Ziplock bags wrapped in plastic wrap, and the inspector determined that the object weighed one pound and 0.3 ounces. Dorman took a small sample of the contents, and a field test showed that it was positive for methamphetamine.

{¶ 5} Inspector Dorman contacted Detective Adam Kempf, a member of the A.C.E. Task Force, a multiagency task force in Greene County that focuses on drug trafficking. They arranged for a controlled delivery of the package, where Dorman would go undercover as a letter carrier and deliver the package to the South Linda Drive residence. Detective Kempf obtained an anticipatory search warrant for the residence, and other officers surveilled the home prior to the controlled delivery.

{¶ 6} On January 16, 2020, Dorman went to the South Linda residence, knocked on the door, and announced that he was from the post office and had a package. Howard came to the door and accepted the package. As soon as Dorman walked away, several task force members executed the search warrant, and the package was located

on the bed in Howard's bedroom. Testing showed that the substance in the package was 447.86 grams (plus or minus 0.12 grams) of methamphetamine.

{¶ 7} Howard was placed in a police cruiser outside the residence and was informed of his *Miranda* rights; he answered questions from Inspector Dorman and Detective Kempf. Howard admitted that he resided there and that the package was addressed to him, but he stated that he did not open the package and did not know what was in it. Howard told the officers that he had placed orders from eBay and was expecting a few packages. He denied that drugs were being delivered to him that day. When the detectives brought up his girlfriend, Monica Foster, Howard told the officers that Foster had asked him to have packages delivered to his address.

{¶ 8} Several days later, Detectives Kempf again spoke with Howard and Foster at the police station, at Foster's request. Kempf initially broached the idea of their acting as confidential informants. While speaking with Detectives Kempf and Sean Williams, Howard said that he thought he was "trying to help out a friend" who did not having a mailing address, and he described how he became involved with receiving packages for William Settler and then Mike Lyric. Howard repeatedly claimed not to know what was in the packages. However, when pressed about what the packages could have contained, Howard said that he did not think it was Cheerios or underwear and could have been pills, but not Advil. Foster told the police that Howard knew the items contained methamphetamine. After Foster was brought into the interview room, Howard and Foster showed Detectives Kempf and Williams where Lyric lived using Google Maps. Kempf saw no reason why Lyric could not receive his own mail at that address.

{¶ 9} Foster testified that, several times a week over a period of months, she drove Howard and the packages to Lyric's house in Dayton and, as payment, Howard gave her $20 and methamphetamine. Howard received $40 from Lyric. After Foster became curious about what the packages contained, Howard told her that the packages he delivered to Lyric contained methamphetamine. Foster indicated that she had purchased methamphetamine from Lyric at other times. According to Foster, Howard received a lot of other packages that were addressed to him, which he did open; those packages did not contain illegal drugs.

{¶ 10} On June 12, 2020, Howard was indicted on one count each of aggravated trafficking in drugs and aggravated possession of drugs, both involving methamphetamine in an amount equal to or exceeding 100 times the bulk amount, which made them felonies of the first degree with mandatory maximum imprisonment. The charges stemmed from the delivery of the package on January 16, 2020. The matter proceeded to a jury trial in May 2021, during which the State presented seven witnesses and Howard testified in his own defense. After deliberating, the jury found Howard guilty of both counts.

{¶ 11} At sentencing, the trial court merged the offenses, and the State elected to proceed on aggravated trafficking in drugs. Pursuant to R.C. 2925.03(C)(1)(f), the trial court imposed as a mandatory prison term the maximum statutory sentence for a first-degree felony: a minimum of 11 years to a maximum of 16½ years in prison. The court waived the mandatory fine but ordered Howard to pay court costs.

{¶ 12} Howard raises one assignment of error on appeal.

## II. Manifest Weight of the Evidence

{¶ 13} In his sole assignment of error, Howard claims that his conviction was against the manifest weight of the evidence.

{¶ 14} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact. Rather, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 16} Howard was convicted of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2). That statute provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

{¶ 17} The jury also found Howard guilty of aggravated possession of drugs, in violation of R.C. 2925.11(A). That statute provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶ 18} " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession of a drug may be either actual physical possession or constructive possession. *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18. "A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession." (Citations omitted.) *Id.* at ¶ 18. "Establishment of ownership is not required." *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 33. In determining whether an individual possessed an item, it is necessary to consider all of the facts and circumstances surrounding the incident. *Mabry* at ¶ 20.

{¶ 19} Both statutes require a defendant to have acted knowingly. "A person acts

knowingly, regardless of his [or her] purpose, when he [or she] is aware that his [or her] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he [or she] is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

{¶ 20} "Culpable mental states are frequently demonstrated through circumstantial evidence." *State v. Hypes*, 2d Dist. Clark No. 2018-CA-110, 2019-Ohio-4096, ¶ 21, quoting *State v. Fox*, 2018-Ohio-501, 106 N.E.3d 224, ¶ 14 (10th Dist.). Circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 482 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988); *State v. St. John*, 2d Dist. Montgomery No. 27988, 2019-Ohio-650, ¶ 49. In some cases, "circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence." *State v. Jackson*, 57 Ohio St.3d 29, 38, 565 N.E.2d 549 (1991). A defendant's state of mind may be inferred from the totality of the circumstances. *State v. Murphy*, 2d Dist. Montgomery No. 27802, 2018-Ohio-3506, ¶ 16.

{¶ 21} On appeal, Howard claims that the weight of the evidence demonstrates that he did not knowingly engage in drug activities. He emphasizes that he had a service in which he accepted packages for other people to prevent porch piracy. He states that he did not open the packages and was not suspicious of them, as he believed the postal service had mechanisms to check packages and prevent the delivery of illegal items.

Howard further asserts that the testimony of Foster, who stated that Howard knew the contents of the packages, lacked credibility.

{¶ 22} At trial, the State provided both direct and circumstantial evidence that Howard had knowingly accepted a package with methamphetamine on January 16, 2020. Howard had repeatedly received Overnight Express packages at his residence from Phoenix, Arizona that were addressed to a name similar to his. Within hours of receiving a package, he took it, unopened, to the home of someone who sold methamphetamine, Mike Lyric. Neither Howard nor the officers knew of any reason why Lyric could not receive packages at his address directly. Lyric paid Howard $40 for delivering the package to him, and Howard in turn paid Foster $25 and methamphetamine for driving him. Although Howard received other packages at his residence that were properly addressed to him, which he opened, he did not open the packages that he delivered to Lyric. Foster testified that Howard had told her that the packages contained methamphetamine.

{¶ 23} During her testimony, Foster acknowledged that she had pending drug charges arising out of the delivery of drugs at issue here, as well as other charges for identity fraud and theft. Foster stated that she had signed an agreement with the State to testify truthfully against Howard. However, she indicated that she had not signed a plea agreement and had not been promised a specific outcome in exchange for her testimony. Nonetheless, Foster was hoping for a favorable resolution due to her cooperation.

{¶ 24} Howard testified on his own behalf and claimed that, for a couple of years,

he had been accepting packages as a courier service to address concerns about porch piracy. Howard identified three people for whom he had accepted packages: Foster, Lyric, and Settler. He stated that he had accepted packages for Foster over a dozen times, and he assumed he had been accepting car parts for Lyric. Howard stated that he had not opened the packages because they were not addressed to him. He acknowledged that he was paid $40 for delivering the packages, which he split with Foster.

{¶ 25} On cross-examination, Howard said that he had delivered packages to Settler in the basement of a building at Wright State University. When Settler moved to Florida, Howard was told to deliver the packages to Lyric. Howard acknowledged that he had never had a conversation with Lyric about the packages he was delivering, but he had delivered packages to Lyric's house two or three times a week for months. Howard said that the packages were delivered to him instead of Lyric because he had time and "to make things move faster." Howard could not explain, though, how delivering a package to his house, rather than to Lyric directly, was faster. When questioned about the name of the addressee on the packages, Howard could not explain how he knew which packages to take to Lyric.

{¶ 26} Howard denied that Lyric was a drug dealer and said that Lyric was in property management. He conceded that he had told detectives that Lyric would give him drugs. Howard asserted that he did not know what was in the packages, though he admitted telling detectives that he did not think it was "Cheerios or underwear" and it could have been pills, but not Advil.

{¶ 27} The jury also heard that Howard had failed to appear for trial on the day after the jury was empaneled. He was found hiding in a closet at Lyric's house.

{¶ 28} It was the province of the jury, as the trier of fact, to assess the witnesses' credibility and determine whether the State had proved, beyond a reasonable doubt, that Howard had committed the charged offenses. In reaching its verdict, the jury was free to believe all, part, or none of each witness's testimony. *State v. Peterson*, 2d Dist. Montgomery No. 29061, 2021-Ohio-3947, ¶ 27. Although Howard denied knowing the contents of the package he had accepted on January 16, 2020, the jury could have reasonably concluded otherwise based on the way the packages were labeled and mailed to Howard, Howard's handling of the packages, his relationship with the individuals to whom he delivered the packages, and Foster's express testimony that Howard knew the packages contained methamphetamine. In assessing Foster's credibility, the jury was able to take into account her agreement with the State and her aspiration for a favorable resolution on her pending charges. Upon review of the entire trial, we cannot conclude that the jury's decision that Howard acted knowingly was against the manifest weight of the evidence.

{¶ 29} Howard has not specifically challenged the jury's conclusion that he "possessed" methamphetamine on January 16, 2020, or that he delivered drugs to someone who sold methamphetamine, and we would find such arguments unavailing. As for the possession charge, Howard accepted delivery of a package containing approximately 450 grams of methamphetamine and took the package to his bedroom, where it was found by A.C.E. Task Force members. Under those circumstances, the

jury reasonably concluded that he possessed the drugs.

{¶ 30} Whether Howard engaged in trafficking is a more difficult question, as some courts have held that the receipt of drugs alone, even in an amount indicating that the drugs would be sold, does not satisfy R.C. 2925.03(A)(2). *See State v. Collins*, 8th Dist. Cuyahoga No. 95422, 2011-Ohio-4808, ¶ 27-29. However, "[c]ircumstantial evidence has long been used to successfully support drug trafficking convictions." *State v. Batdorf*, 2d Dist. Greene No. 2020-CA-3, 2020-Ohio-4396, ¶ 16, citing *State v. Delaney*, 2018-Ohio-727, 106 N.E.3d 920, ¶ 11 (9th Dist.). For example, "the convergence of illegal drugs, drug paraphernalia (including baggies), and large sums of cash permit a reasonable inference that a person was preparing drugs for shipment." *Id.*, quoting *Delaney* at ¶ 11; *see also State v. Rutledge*, 6th Dist. Lucas No. L-12-1043, 2013-Ohio-1482, ¶ 15. Circumstantial evidence and direct evidence have the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.

{¶ 31} The Eighth District has held that, when the defendant has merely received drugs, the State nevertheless may prove trafficking by showing that the defendant did so as part of a conspiracy to distribute drugs, including providing details on the origin of the shipment, method of shipment, and parties involved in the shipment (real or otherwise), in a manner designed to prove the act of receipt is part of an overall drug conspiracy. *Collins* at ¶ 30.

{¶ 32} This is consistent with our precedent regarding complicity. R.C. 2923.03, the complicity statute, extends criminal liability to those who "aid or abet another in committing the offense" while "acting with the kind of culpability required for the

commission of an offense." *See* R.C. 2923.03(A)(2). The complicity statute further provides that "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F). The State may charge complicity in terms of the complicity statute or in terms of the principal offense. *See State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 181; *State v. Portis*, 2d Dist. Montgomery No. 28677, 2021-Ohio-608, ¶ 48. "Thus, a defendant charged with an offense may be convicted of that offense upon proof that he [or she] was complicit in its commission, even though the indictment is 'stated * * * in terms of the principal offense' and does not mention complicity." *State v. Herring*, 94 Ohio St.3d 246, 251, 752 N.E.2d 940 (2002).

{¶ 33} In *State v. Wilkinson*, 8th Dist. Cuyahoga No. 100859, 2014-Ohio-5791, the defendant accepted a parcel containing illegal drugs during a controlled delivery by a postal inspector. A detection device that had been placed inside the package by the postal inspector showed that the parcel was opened approximately five minutes later. After seeing the device, Wilkinson called her mother, who was receiving a similar package. Other officers then executed an anticipatory search warrant. During questioning by the police, Wilkinson admitted that she had allowed someone named Marcus to receive packages at her home, but she denied knowing that Marcus was a drug dealer. On review, the Eighth District affirmed the conviction for trafficking, stating that "the state established that Wilkinson's receipt of the parcel was part of the overall conspiracy to trafficking in drugs, and that she received the package with knowledge that it contained illegal narcotics." *Id.* at ¶ 29. The court reasoned that circumstantial

evidence supported the conclusion that Wilkinson "was a middle person or mule in the drug operation. This theory explained why Wilkinson did not have any items indicative of drug trafficking in her home. Furthermore, the circumstances and facts surrounding the delivery and Wilkinson's contradictory testimony allowed the factfinder to reasonably conclude she was acting as the middleman in this transaction." *Id.* at ¶ 31.

**{¶ 34}** The same is true in this case. Howard admitted that he repeatedly received packages for William Settler and then Mike Lyric. The packages were sent Overnight Express from Phoenix to Howard, but the addressee was listed as a variation of Howard's name. After the October 2019 package was intercepted, deliveries to that address ceased, and they resumed at the South Linda Drive address. Within a couple hours of delivery by the U.S. Postal Service, Howard would take the packages to Lyric and Lyric would pay him $40 per package. According to Foster, Howard knew that the packages contained methamphetamine, which Lyric sold to others. Howard paid Foster $25 and methamphetamine for driving him. Foster indicated that she had bought methamphetamine from Lyric. Although Howard denied knowing that the packages contained illegal drugs, the jury reasonably concluded that he was a middleman and active participant in the trafficking of methamphetamine.

**{¶ 35}** Howard's sole assignment of error is overruled.

### III. Conclusion

**{¶ 36}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and LEWIS, J., concur.


Copies sent to:

Megan A. Hammond
Michael R. Pentecost
Hon. Adolfo A. Tornichio