**[Cite as *State v. Drane*, 2022-Ohio-4624.]**

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29317 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-04197 |
| | : | |
| JAMARIYO L. DRANE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of December, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CLARISSA A. SMITH, Atty. Reg. No. 0095897 and JAMES R. WILLIS, Atty. Reg. No. 0032463, 1220 West Sixth Street, Suite 308, Cleveland, Ohio 44113
        Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Jamariyo L. Drane appeals from his convictions for murder, felonious assault, discharge of a firearm on or near prohibited premises, failure to comply, and having weapons under disability.  For the reasons outlined below, we affirm.

## I.    Facts and Procedural History

{¶ 2} On the night of October 23, 2018, Justin Thomasson, Jaylen Gregory, and Calvin Tribble were driving around Dayton in a blue Cadillac owned by Tribble. Thomasson was driving the vehicle, Tribble was in the front passenger seat, and Gregory was in the back seat.  Tribble's car was stopped when a red Dodge Charger pulled up next to it.  The Charger then followed the group as they continued driving.  Shots were fired from the Charger, at which point Thomasson tried outrun the vehicle.  During the ensuing chase, Tribble's car was involved in a collision which caused it to spin around and come to a stop.  At that point, more shots were fired from the Charger.

{¶ 3} Agent Zachary O'Diam, an agent with the Drug Enforcement Administration, was sitting in a marked cruiser on North Gettysburg Avenue when he observed Tribble's vehicle travelling at a high rate of speed.  O'Diam also observed a red Dodge Charger with a black stripe on the side following the Cadillac.  O'Diam observed the cars turn onto Wentworth Avenue, at which time he heard multiple gunshots.  O'Diam began pursuit and issued a radio bulletin with a description of the cars.  He immediately observed

Tribble's car; it had reversed direction and was heading back toward Gettysburg Avenue. O'Diam stopped the vehicle and ultimately determined that Tribble had been shot. Tribble died at the scene.

{¶ 4} Dayton Police Officer Chris Smith was on patrol when he heard O'Diam's description of the vehicles. As Smith was en route to the shooting location, he observed a red Dodge Charger cross the road in front of his cruiser. The area was well lit, and Smith was able to observe a lone black male in the Charger. Smith attempted to stop the car, but the Charger did not comply. However, Smith was able to read the license plate. Smith was travelling at approximately 110 miles per hour when he lost track of the Charger.

{¶ 5} The Charger was pursued at high rates of speed from Dayton to West Carrollton, where it was quickly located parked in front of an apartment at 1 Kennywood Drive. The car was towed from the scene, but the driver was not located.

{¶ 6} Approximately 20 minutes after the shooting, Sunrashje[1] Walker called 911 to report that her red Dodge Charger had been stolen. The plates on the Charger being pursued by police were registered to Walker. Walker indicated to the dispatcher that her car had been parked at the home of her friend, Brianna Johnson, when it was stolen. When officers spoke to Johnson, she initially confirmed Walker's claim, but Johnson ultimately informed the officers that the car had not been parked at her home. Johnson also informed the officers that Walker had texted her shortly before the police arrived at her house. The texts informed Johnson of the information Walker wanted her to convey

---

[1] We note that the State spells Walker's first name differently than Drane spells it in his brief; it is unclear from the record which spelling is correct.

to the police about the car. Johnson also informed the officers that Walker had a boyfriend whom Walker called "Mari."

{¶ 7} Detectives then met with Walker, and Walker permitted them to access her cellphone. The detectives noted that one of Walker's contacts was listed as "Mari" and showed a phone number with a 765 area code. A search warrant was obtained for records of the cellphone with the area code of 765. It was determined that the cellphone had made calls to Walker during the time of the shooting and ensuing chase. It was also determined that the phone had been traveling in the path of the shooting and chase during the relevant time frame. Investigators noted that the phone had also made calls to Patrina Drane and that both Patrina Drane and Walker had been listed on Montgomery County Jail records as approved visitors for Drane at a point when he had been previously incarcerated. The records listed Patrina Drane as Drane's mother.

{¶ 8} The day after the shooting, the Dayton Police Department and the Ohio State Highway Patrol were conducting a joint traffic operation unrelated to the shooting incident. The State Highway Patrol had a plane in the air providing visual assistance to the Dayton Police on the ground. During the operation, the Dayton Police attempted to stop a silver Dodge Charger with no front license plate and dark tinted windows. The Charger did not stop and fled at a high rate of speed. With the help of the plane spotters, Dayton Police were able to follow the Charger, which drove to and parked at 1 Kennywood Drive. The driver was observed as he exited the vehicle and ran to an apartment. The driver, who used a key to enter the apartment located at 29 Tonywood Circle, was apprehended and later identified as Drane.

{¶ 9} Drane was interviewed by police and provided the interviewers with an alibi. Drane asked the interviewers to call his mother to confirm his alibi. When police questioned Patrina Drane about the alibi information, they were not able to verify Drane's claims.

{¶ 10} Drane was indicted on two counts of murder, four counts of felonious assault, three counts of discharge of a firearm on or near prohibited premises, two counts of failure to comply with the order or signal of a police officer, and one count of having weapons under disability. All the counts, except the two for failure to comply, carried three-year, 54-month, five-year and 90-month firearm specifications.

{¶ 11} Drane waived a jury trial, and a bench trial commenced on October 4, 2021. The trial court found Drane guilty on all counts. A sentencing hearing was conducted on November 22, 2021, and the court sentenced Drane to an aggregate prison term of 58 years to life.

{¶ 12} Drane appeals.

## II.    Hearsay and Confrontation Issues

{¶ 13} The first, second, third and sixth assignments of error asserted by Drane, which are related, state as follows:

> GIVEN THE TWO MOST CRITICAL WITNESSES, I.E., SUNRASHAE WALKER AND PATRINA DRANE, WERE "HEARSAY DECLARANTS," THE LACKING OF A FINDING THEY WERE CONSTITUTIONALLY "UNAVAILABLE", RESULTED IN THE APPELLANT

BEING VICTIMIZED BY A VIOLATION OF THE HEARSAY RULE AND HIS RIGHT OF CONFRONTATION.

TO SATISFY THE CONFRONTATION CLAUSE, TESTIMONIAL STATEMENTS OF WITNESSES ABSENT FROM TRIAL CAN ONLY BE ADMITTED WHERE THE DECLARANT IS UNAVAILABLE, AND ONLY WHERE THE DEFENDANT HAS HAD A PRIOR OPPORTUNITY TO CROSS-EXAMINE.

THE PROPONENT OF STATEMENTS MADE BY HEARSAY DECLARANTS MUST DEMONSTRATE AN INABILITY TO PROCURE THEIR ATTENDANCE AND THE FINDING MUST BE MADE THEY ARE UNAVAILABLE AT THE TIME AS DEFINED IN OHIO EVID.R. 804(A)(5).

THE STATE'S INABILITY TO PROCURE THE ATTENDANCE OF VARIOUS WITNESSES WHO WERE, INDISPUTABLY, HEARSAY DECLARANTS, AND WHOSE EVIDENCE WAS CONSIDERED IN VIOLATION OF THE APPELLANT'S RIGHTS OF CONFRONTATION, WHICH ALSO VIOLATED HIS DUE PROCESS RIGHTS.

{¶ 14} In these assignments of error, Drane claims the trial court improperly denied him the opportunity to confront witnesses when it admitted hearsay evidence. Specifically, he contends the trial court permitted the State to elicit testimony regarding statements made by Walker and by Patrina Drane, neither of whom testified at trial.

{¶ 15} "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted." Evid.R. 801(C). In general, hearsay is not admissible; however, there are several exceptions to the hearsay rule. Evid.R. 802 and Evid.R. 803.

{¶ 16} The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Only testimonial hearsay implicates the Confrontation Clause. A statement is "testimonial" if it is made for " 'a primary purpose of creating an out-of-court substitute for trial testimony.' " *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 87, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). The admission of a testimonial out-of-court statement by a declarant who does not testify at trial violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 52, 53-54, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We review evidentiary rulings that implicate the Confrontation Clause de novo. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97.

{¶ 17} We begin by noting that Drane has not identified, and we cannot find, any statements attributable to Patrina Drane that were introduced into the record. Thus, we find no merit in this claim.

{¶ 18} Turning to Walker, Drane first complains that the court permitted the State to enter into evidence the recording of the 911 call made by Walker despite the fact that she was not called to testify concerning the authenticity and accuracy of the tape. We first note that, "[u]nless the record indicates otherwise, the judge [in a bench trial] is

presumed to have considered only admissible evidence." *State v. Hawkins*, 2d Dist. Montgomery No. 29013, 2021-Ohio-3373, ¶ 57, quoting *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 115, ¶ 27 (8th Dist.). A review of the record demonstrates that the State properly authenticated the 911 recording as required by Evid.R. 901(A). Further, Walker's 911 call, in which she claimed her car had been stolen, was not admitted to prove the truth of her statements. Instead, it was introduced to demonstrate the course of the police investigation and how they came to speak with Walker. And the trial court expressly stated that the evidence would be considered solely for that purpose. The trial court also stated that it was aware of its role as the trier of fact and its duty to consider only admissible evidence. Thus, we find no error in the trial court's decision to admit the 911 call records.[2]

{¶ 19} The next statement attributed to Walker occurred when the police met with her to investigate her 911 call. At trial, a police officer testified that Walker informed her (the officer) that she should talk to Brianna Johnson. Again, this statement was not admitted to prove the truth of the statement, but to merely show the course of the police investigation. We find no error related to this evidence.

{¶ 20} From our review of the record, we conclude that the State did not submit improper hearsay testimony, which eliminates Drane's Confrontation Clause assertions.

{¶ 21} Accordingly, the first, second, third and sixth assignments of error are overruled.

---

[2] We also note that Drane asserts that the State did not make any attempt during trial to demonstrate that Walker was unavailable to testify at trial. This claim is belied by the record.

### III.    Claim Regarding Trial Judge

**{¶ 22}** Drane's fourth assignment of error states as follows:

THE COURT ERRED WHEN, IN A BENCH TRIAL, IT EXPRESSLY DELEGATED TO THE PROSECUTOR A ROLE ASSIGNED TO HIM AS ACTING JUDGE AND JURY AND, IN SO DOING, FAILED TO EXPRESSLY EXPLAIN THE BASIS OF HIS RULING THAT RESULTED IN THE ADMISSIONS WITHOUT A DETERMINATION BY THE COURT THAT CERTAIN EVIDENCE WAS ADMISSIBLE.

**{¶ 23}** In this assignment of error, Drane contends that the trial court abdicated its role by improperly permitting the prosecutor to determine the admissibility of evidence. Drane's claims are premised upon his interpretation of the trial court's response to a defense objection.   Specifically, after defense counsel claimed certain evidence constituted hearsay, the trial court stated, "I'm going to overrule that but I'm going to let the State tell me why I should first.   I got my own ideas."   Tr. p. 201.   The prosecutor then argued that the subject evidence was not hearsay.

**{¶ 24}** We have reviewed the entire passage surrounding the cited language and find nothing to suggest that the trial court permitted the State to determine the admissibility of the evidence.   Indeed, from our reading of the cited language, the trial court merely stated that it was going to permit the State to respond to the defense objection.   Further, it is clear that prior to doing so, the trial court had already indicated the objection would be overruled.   After hearing the State's response, the trial court then indicated a separate

basis for admitting the subject evidence.

{¶ 25} There is no merit to Drane's assertion that the trial court permitted the State to determine the admissibility of evidence. The fourth assignment of error is overruled.

## IV. Sufficiency of the Evidence

{¶ 26} Drane's fifth assignment of error states:

GIVEN THE FAILURE OF ANYONE TO IDENTIFY THE DEFENDANT AND CONNECT HIM TO THE RED DODGE CHARGER AND CELL PHONE CENTRALIZED IN THIS CASE, IT INEXORABLY FOLLOWS THE RECORD FAILS TO SHOW SUFFICIENT EVIDENCE TO SUPPORT ANY CONVICTION

{¶ 27} Drane contends the State failed to present sufficient evidence to sustain the convictions because there was no direct evidence that he committed the murder and other offenses.

{¶ 28} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 29} We agree that there was no eyewitness evidence identifying Drane as the driver of the Dodge Charger and the perpetrator of the offenses. However, the State presented ample circumstantial evidence to sustain the convictions. "Circumstantial evidence has the same probative value as direct evidence." (Citations omitted.). *State v. Howard*, 2022-Ohio-1609, 188 N.E.3d 693, ¶ 20 (2d Dist.).

{¶ 30} From our review of the record, we conclude that the State presented competent evidence demonstrating that a police officer observed one black male in the Dodge Charger at the time of the shooting and pursuit. The police were able to link Drane's cellphone to the path of the Charger during the shooting and the pursuit. The red Charger was found in the same place where Drane was later apprehended after the pursuit of the silver Dodge Charger. Drane was found in an apartment where police located ammunition for a Glock firearm, and the ammunition was determined to be consistent with the spent bullets and fired casings collected from Tribble's body and the shooting scene. Drane presented an alibi and told police his mother could confirm it; however, Patrina Drane did not verify the alibi.

{¶ 31} The evidence presented by the State was sufficient to sustain the convictions. Accordingly, the fifth assignment of error is overruled.

## V. Ineffective Assistance of Counsel

{¶ 32} Drane's seventh and eighth assignments of error state:

GIVEN THE APPELLANT PLEADED NOT GUILTY AND GIVEN NO

WITNESS IDENTIFIED THE ACCUSED AS HAVING BEEN INSIDE THE

VEHICLE (FROM WHICH THE FATAL SHOTS WERE FIRED), COUNSEL'S ADMISSION THAT HIS CLIENT WAS IN SUCH VEHICLE WHEN THE SHOTS WERE FIRED, BEING INDEFENSIBLE CANNOT SURVIVE MEANINGFUL SCRUTINY.

GIVEN THE APPELLANT PLEAD NOT GUILTY, AND GIVEN NO WITNESS IDENTIFIED THE ACCUSED OF HAVING BEEN INSIDE THE VEHICLE, (FROM WHICH THE FATAL SHOTS WERE FIRED) COUNSEL'S ADMISSION HIS CLIENT WAS INSIDE THE VEHICLE WHEN THE SHOTS WERE BEING FIRED IS INDEFENSIBLE; HENCE CANNOT SURVIVE MEANINGFUL SCRUTINY, SO POSTURED THE ATTORNEY PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE ADMITTED THAT HIS CLIENT WAS INSIDE THE VEHICLE.

{¶ 33} In these assignments of error, Drane claims defense counsel was ineffective because he admitted Drane was in the red Dodge Charger at the time of the shooting.

{¶ 34} To prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient, and that the defendant was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 446 U.S. 668, 687, 194 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Id.* at 697.

{¶ 35} In his appellate brief, Drane first claims defense counsel expressly admitted that Drane was the driver of the red Dodge Charger. Later in his brief, Drane states that

counsel "virtually conceded" his client was in the car. In support of these assertions, Drane cites to a portion of the closing argument wherein defense counsel stated that a State's witness (Kevin Horan) "can probably put that phone in that charger."[3] Tr. p. 217. Drane contends this argument constituted deficient performance which resulted in prejudice. We disagree.

{¶ 36} We cannot conclude that counsel's concession regarding Horan's testimony constituted deficient performance. Instead, a review of the entire closing argument demonstrates that defense counsel then continued to argue that regardless of Horan's testimony linking the phone to the Dodge Charger, the State failed to present any reliable evidence connecting the phone or the car to Drane.

{¶ 37} Also, we note that counsel raised numerous objections during trial to all the testimony of which Drane complains. Further, we have reviewed the entire record and find no evidence that counsel failed to adequately represent Drane's interests.

{¶ 38} Because we find no merit in this argument, the seventh and eighth assignments of error are overruled.

## VI. Conclusion

{¶ 39} Drane's assignments of error being overruled, the judgment of the trial court is affirmed.

---

[3] Horan testified regarding his analysis demonstrating that the cellphone with the 765 area code travelled the same path as the red Dodge Charger during the shooting and ensuing chase.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Clarissa A. Smith
James R. Willis
Hon. Steven K. Dankof