[Cite as *State v. Thomas*, 2025-Ohio-1767.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-17 |
| | : | |
| v. | : | Trial Court Case No. 2023 CRB 00039 |
| | : | |
| DAOTO THOMAS | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 16, 2025

. . . . . . . . . . .

RICHARD L. KAPLAN, Attorney for Appellant

ANDREW H. JOHNSTON and LENEE BROSH, Attorneys for Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Daoto Thomas appeals from his conviction and sentence for criminal damaging.   For the reasons set forth below, we affirm.

## I.      Factual and Procedural Background

{¶ 2} In 2022, Thomas rented an apartment owned by Messler Family Investments

LLC ("the Messlers"). Thomas lived in the apartment for approximately five months, but he was evicted effective December 27, 2022. After regaining entry to the apartment, the Messlers alleged that Thomas caused damage to the apartment prior to quitting the premises. On January 3, 2023, a complaint was filed charging Thomas with criminal damaging in violation of R.C. 2909.06.

{¶ 3} A bench trial was conducted on March 19, 2024. Colin Messler testified that, on December 28, 2022, he received a call from the City of Troy stating that water was "pouring from the ceiling inside the unit." Messler stated he was unsure whether Thomas had vacated the apartment, but Thomas had not yet returned the keys to the rental company. Messler testified that, upon arriving at the apartment, he found the door locked and no sign of forced entry. Once inside the apartment, Messler observed water damage consisting of saturated carpets and flooring and a ceiling that had partially collapsed. Messler further testified that the temperature that week had fallen below zero and, because the thermostat had been torn off the wall, the apartment's heater was inoperable, which had caused the water pipes to freeze and burst. As a result of what he observed, Messler summoned the Troy police to the apartment.

{¶ 4} Messler also testified there were holes in, and spray painting on, the walls. Further, cabinet doors had been torn down, the range door was bent and would not close, the dishwasher had been moved and tampered with, a bathroom door was broken, and the staircase spindles had been removed. According to Messler, the cost to make repairs to the apartment was $13,447; he submitted receipts related to the repairs.

{¶ 5} Troy Detective Adam Simpson testified that Thomas indicated he was

irritated with the Messlers because they "would not work with him in regards to the rent." Simpson corroborated the damage to which Messler had testified and also confirmed that there was no sign of forced entry. Simpson also testified that he had contacted Thomas regarding the damage to the apartment. Simpson testified that Thomas claimed the spray painting on the walls constituted "art" and not damage. Indeed, Simpson testified that when he described one painting as a "penis," Thomas corrected him and described it as a "judicial gavel."

{¶ 6} A video of the damage was submitted into evidence. The video corroborated Messler's and Simpson's testimony regarding the damage to the apartment.

{¶ 7} The court found Thomas guilty. At the subsequent sentencing hearing, the court addressed the issue of restitution. The Messlers reiterated a restitution claim for $13,447.05, noting that the damage to the apartment was "more than just normal." Thomas, through his counsel, stated he was not contesting that amount. The court sentenced Thomas to a jail term of 90 days, with 45 days suspended, and ordered restitution in the amount requested by the Messlers.

{¶ 8} Thomas appeals.

## II.    Jury Waiver

{¶ 9} Thomas's first assignment of error is as follows:

MR. THOMAS DID NOT WAIVE HIS RIGHT TO A JURY TRIAL. ANY SUCH WAIVER MUST BE IN WRITING. THEREFORE, HIS RIGHT TO A JURY TRIAL WAS VIOLATED AS PROTECTED BY THE 14TH AND 6TH

AMENDMENTS TO THE UNITES [SIC] CONSTITUTION AND ARTICLE I SECTION 10 [SIC] OF THE OHIO CONSTITUTION.

{¶ 10} Though he did not request a jury trial, Thomas asserts that he was denied his constitutional right to a jury trial. In support, he argues that the right to a jury is guaranteed unless it is affirmatively waived. Therefore, he argues that Crim.R. 23(A), which requires the defendant to file a written jury demand in petty offense cases, is unconstitutional because it denies a defendant his unrestricted right to trial by jury.

{¶ 11} Thomas is correct that both the Sixth Amendment to the United States Constitution and Section 5, Article I of the Ohio Constitution guarantee the right to trial by jury. *City of Mentor v. Giordano*, 9 Ohio St.2d 140, 143 (1967). However, it is well established that petty offenses are excluded from the automatic right to trial by jury. *Blanton v. City of N. Las Vegas, Nev.*, 489 U.S. 538, 541 (1989); *State v. Burnside*, 2010-Ohio-1235, ¶ 46 (2d Dist.). Further, the Ohio Supreme Court has stated that the right to a jury trial "is not an absolute and unrestricted right in Ohio with regard to misdemeanors[.]" *Giordano* at paragraph one of the syllabus. Instead, the Court has held that rules and statutes conditioning the right to a jury trial for petty offenses on a written jury demand do not violate the constitutional right to trial by jury. *State v. Tate*, 59 Ohio St.2d 50, 52 (1979), citing *Hoffman v. State*, 98 Ohio St. 137 (1918), paragraph one of the syllabus.

{¶ 12} Crim.R. 23(A) states in relevant part as follows:

. . . In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand

must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto.

{¶ 13} A "petty offense" is defined by Crim.R. 2(D) as "a misdemeanor other than a serious offense." A "serious offense" is defined by Crim.R. 2(C) as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Criminal damaging, in the absence of the risk of physical harm to a person, is a second-degree misdemeanor with a maximum sentence of "not more than ninety days." R.C. 2929.24(A)(2). Therefore, under the facts of this case, criminal damaging was a petty offense, and Thomas's right to a jury trial was conditioned upon his constitutionally permitted affirmative request for a jury.

{¶ 14} Based upon the foregoing, we conclude that Thomas's argument about denial of his right to a jury trial lacks merit. The first assignment of error is overruled.

### III. Sufficiency and Weight of the Evidence

{¶ 15} The second assignment of error states as follows:

DAOTO THOMAS' CONVICTION FOR CRIMINAL DAMAGING WAS BASED ON INSUFFICENT [SIC] EVIDENCE AND AGAINST AGAINST [SIC] THE WIEGHT [SIC] OF THE EVIDENCE.

{¶ 16} Thomas claims the State did not present sufficient evidence to sustain his conviction and the conviction was against the manifest weight of the evidence.

{¶ 17} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

{¶ 18} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*

{¶ 19} Further, "[a]lthough sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.). *Accord State v. Winbush*, 2017-Ohio-696, ¶ 58 (2d Dist.). As a

result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra*, 2022-Ohio-1421, ¶ 50 (2d Dist.)

**{¶ 20}** Thomas was convicted of criminal damaging in violation of R.C. 2909.06. That statute provides that no person shall knowingly cause or create a substantial risk of physical harm to any property of another without the other person's consent. R.C. 2909.06(A)(1). A person acts knowingly when, "regardless of purpose, the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

**{¶ 21}** Thomas's argument centers on his claim that the State failed to present any direct evidence of his involvement in or his intent to cause the damage to the apartment. Thus, he argues his conviction is impermissibly based on inference stacking. We disagree.

**{¶ 22}** The State may prove guilt through either circumstantial and/or direct evidence. *State v. Zadar*, 2011-Ohio-1060, ¶ 18, (8th Dist.). "Circumstantial evidence has the same probative value as direct evidence." (Citations omitted.) *State v. Howard*, 2022-Ohio-1609, ¶ 20 (2d Dist.). Indeed, "[c]ulpable mental states are frequently demonstrated through circumstantial evidence." *Id.,* quoting *State v. Hypes,* 2019-Ohio-4096, ¶ 21 (2d Dist.), quoting *State v. Fox*, 2018-Ohio-501, ¶ 14 (10th Dist.). In some

cases, "circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence." *State v. Jackson*, 57 Ohio St.3d 29, 38 (1991). A defendant's state of mind may be inferred from the totality of the circumstances. *State v. Murphy*, 2018-Ohio-3506, ¶ 16 (2d Dist.). So long as reasonable inferences can be drawn therefrom, the State can establish necessary facts from circumstantial evidence. *State v. DeGenero*, 2017-Ohio-624, ¶ 18 (8th Dist.).

{¶ 23} There was no direct evidence that Thomas damaged the apartment. However, the record contained sufficient circumstantial evidence to support a reasonable inference that he was responsible for the damage.

{¶ 24} As noted, Thomas had legal occupancy of the apartment until December 27, 2022. Thomas did not inform the Messlers that he had vacated the apartment or return the keys to the unit. There was no evidence that anyone other than Thomas had access to the apartment prior to Colin Messler's entering the apartment on December 28, 2022. There was no sign that unauthorized or forced entry had been made. Further, Thomas admitted to spray painting a "gavel" on the wall, and the video showed that all of the painting was done in the same paint. And Thomas did not deny causing the damage when Detective Simpson interviewed him.

{¶ 25} We conclude that there was sufficient competent, credible circumstantial evidence to support the trial court's finding that Thomas had committed the offense of criminal damaging. Accordingly, the second assignment of error is overruled.

## IV. Restitution

{¶ 26} Thomas asserts the following as his third assignment of error:

THE AMOUNT OF RESTITUTION DAOTO THOMAS IS TO PAY IS EXCESSIVE AND NOT SUPPORTED BY THE EVIDENCE.

{¶ 27} In this assignment of error, Thomas contends the amount of restitution ordered by the trial court was not supported by the evidence.

{¶ 28} A trial court may order a defendant to pay restitution to the victim of a misdemeanor offense. R.C. 2929.28(A). The amount of restitution is limited to "the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." *Id.* The court may "base the amount it orders on a recommendation of the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information" as long as the amount ordered is not greater than the amount of the victim's economic loss. R.C. 2929.28(A)(1); *State v. Lalain*, 2013-Ohio-3093, paragraph one of the syllabus.

{¶ 29} The victim has the burden of proving the amount of restitution by the preponderance of the evidence. R.C. 2929.28(A)(1). An order of restitution must be supported by competent, credible evidence. *State v. Sexton*, 2011-Ohio-5246, ¶ 3 (1st Dist.). We review the trial court's decision on restitution under an abuse-of-discretion standard. *State v. Carson*, 2024-Ohio-5407, ¶ 14 (2d Dist.).

{¶ 30} We begin by noting that Thomas, through counsel, stated in open court that he did not contest the amount of restitution sought by the Messler family. Thus, he has waived any argument regarding the amount of restitution. Even had he preserved this matter for review, we would conclude that Thomas has failed to demonstrate error, let

alone plain error, in the amount of restitution ordered by the trial court. The testimony and video evidence demonstrated that the damage was extensive. Colin Messler testified regarding the cost of the necessary repairs, and this testimony was supported by receipts.

{¶ 31} We conclude there was competent, credible evidence in the record supporting the amount of restitution awarded. Therefore, we cannot say the trial court abused its discretion. The third assignment of error is overruled.

## V.    Conclusion

{¶ 32} All of Thomas's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.